FREEMAN, APPELLANT, *v.* SAND COULEE COAL COM-
PANY, RESPONDENT.

(No. 1,285.)

(Submitted March 18, 1901.  Decided April 1, 1901.)

*Master and Servant—Injury in a Mine—Concurring Causes—
Failure to Provide Safe Place to Work—Directed Verdict.*

1.  A complaint alleged that plaintiff was injured by the fall of rock from
    the roof of a mine, and that defendant failed to furnish a reasonably safe
    place for plaintiff to work, and negligently allowed the roof of the mine to
    remain in an unsafe condition, and failed to properly brace it, and that it
    was liable to cave in unless properly supported.  There was evidence that
    the roof of the mine was in a loose and dangerous condition, but the fall
    of slate was immediately caused by the attempt of a, mining engineer to
    remove a small portion of the slate in fixing a plug for a sight.  *Held,* that
    it was error to limit plaintiff's right of recovery to a showing that the roof
    fell from its own weight, and not in connection with any other cause.
2.  Where an injury is the result of two concurring causes, the party respon-
    sible for one of them is not exempt because the person who is responsible
    for the other may be equally culpable.
3.  The truth of plaintiff's evidence is to be assumed, and it is to be regarded
    in the most favorable light on a motion to direct a verdict for defendant.

*Appeal from District Court, Cascade County; J. B. Leslie,
Judge.*

ACTION by Emel Freeman against the Sand Coulee Coal
Company.  From a judgment in favor of the defendant and an
order denying a motion for new trial, plaintiff appeals.  Re-
versed.

*Mr. A. C. Gormley* and *Mr. H. S. Greene,* for Appellant.

*Mr. A. J. Shores* and *Mr. I. Parker Veazey,* for Respondent.

MR. JUSTICE MILBURN delivered the opinion of the
Court.

In this cause plaintiff appeals from an order overruling his
motion for a new trial, the jury having found a verdict for
the defendant.

The action was for damages for injuries resulting to plaintiff from the falling of material from the roof of a coal mine belonging to defendant, in which plaintiff was, on December 31, 1895, employed as a loader of cars. The complaint sets out that in performing his work as such loader it was necessary to enter one of the main entries or tunnels from which the butt entry in which plaintiff was then working opened, and to move cars from such main entry into this butt entry to be loaded by plaintiff; "that the defendant did then and there, and long prior thereto, neglect its said duty toward this plaintiff, and did then and there expose the said plaintiff to unnecessary hazard and peril, which it might and ought in the exercise of reasonable care have guarded against, in this: that the defendant, then well knowing, or by the exercise of reasonable care could or might have known, the roof of said main entry where said cars were then standing as aforesaid, to be unsafe, and liable to fall or cave in, did wholly fail to keep safe or reasonably safe the place where said plaintiff was at work and in the discharge of his duties, and did fail and neglect to properly or at all brace or prop up the roof of the said main entry, tunnel or hallway wherein it was the duty of said plaintiff to be to remove said cars in the discharge of his duties as such servant, but said defendant did suffer the said roof of said main entry, tunnel or hallway then and there where said plaintiff was required to be in the discharge of his duties, and where said cars were then standing as aforesaid, to be and remain in an unsafe condition, and liable to fall or cave in, all of which was unknown to plaintiff, and all of which was known to the defendant, or by the exercise of reasonable care could have been known by said defendant;" "that the said defendant so negligently conducted itself that through and by reason of its negligence and want of or the exercise of reasonable care, on 'its part aforesaid, in failing to keep the said place safe, or to brace up or prop the said roof, while said plaintiff was in the said employ of said defendant, and in the exercise of proper care in the discharge of his duties in loading and removing said cars from the said

main entry, tunnel or hallway, the said roof of said main entry, tunnel or hallway composed of rock, earth and other deposits, then and there loose and liable to cave in (unless the same was propped or braced as aforesaid), did then and there cave in and fall upon this plaintiff, crushing, wounding, bruising and injuring him about the face, head, body, and crushing, mangling and breaking his right leg near the ankle, and injuring and bruising said ankle, whereby he was made sick, sore, disabled and forever lame, and whereby the use of his said right leg, ankle and foot was partially destroyed, so that he has from that day to this been, and will forever remain, lame and disabled from doing manual or other labor as a miner or otherwise,—all to his damage in the sum of five thousand dollars."

The defendant admits its incorporation and business, and that at the time of the injury the plaintiff was in the employ of the defendant as a loader of cars; that he was injured by the fall of material from the roof of the mine; and that one of the bones in his right leg was thereby broken; it denies all other allegations of the complaint. The defendant alleges that at the time of the injury the plaintiff was not engaged in the discharge of his duties, but was in a portion of the mine where, at such times, he had no right to be, and that he received his injuries by reason of his negligence.

Much of the testimony as to matters covered by the instructions of the court which are assigned as erroneous was given in connection with a map of the place in the mine where the accident happened, but the map is not in the record before this Court, and it therefore is not easy to fully comprehend all the circumstances. It appears from the evidence that at the moment when the material fell from the roof of the tunnel upon plaintiff, an engineer and his assistant, both employees of the company, in the performance of duty, were engaged in putting plugs in the roof, to which were to be attached strings for sights to aid the engineer in his business; that the assistant found the slate in the roof where he attempted to put a plug to be in bad

condition. He says: "It was broken on the outside of it,—on the outside down; in the inside of was the same way. Right at that particular point, where the sights was wanted to go, there was a piece of slate that, well, to my judgment, was not sufficiently solid to put those plugs in. If I put them in there, certainly it would have to be done over again in a few days, or before it was time to extend that work. I went to work to take that down. I went to work and cut this piece through between those pieces that were broken out, to take that piece out to make it so I could get a solid piece of roof to put the points in. I cut it through the one side with a pick. On the other side,— well, I will show you. Running along here, this end is cut and fell out. I cut this narrow point through in order to get a piece out in the middle to put that up. I cut the slate in two by a pick about eighteen inches to two feet from the left rib going into the mine. About, I should judge, from my recollection now, the piece of slate I cut in two with the pick was about four feet, extending in at that point. Just as I got that cut through I gave a little pry on it, and came a little bit, and swung, and was held there by a prop. I knocked the prop out, and the whole thing came down. That was the time that Freeman was struck by the rock. I have seen Freeman before, about three or four minutes before I knocked this slate down. I was about finished in the cutting. Saw him coming right out of that crosscut,—crosscut leading out of the back entry, right here; right here at the point of the crosscut, where I could see him plain. I told him to get back. They went back, or went out of my sight. I could suppose, when I lost both men, they were back right where they were. Thought they had gone back into the crosscut. Went on with my work thinking everything was safe,—nothing below the pieces of rock."

There is testimony to the effect that the plaintiff, when injured, was from 20 to 25 feet from the place where the rock was pulled down by the assistant. There is also testimony to show that the roof at the spot where the plaintiff was injured had been in bad condition, and likely to fall, for the period of

about two weeks, and that it had had for its support at least one prop put up by another workman near where plaintiff was hurt, two weeks before; that the prop near the plaintiff did not come down; that the plaintiff, when found after the accident, was in a "partly standing condition," with "the rock covering him almost up to the neck;" that the roof was composed of what is called "soft slate;" and that considerable water was dripping from the roof at the place of the accident.

The appellant assigns as error, among other things, the giving of the following instructions by the court:

"No. 1.    The plaintiff in this case alleges in substance, that at the point where he was struck by falling rock the roof of the main entry consisted of rock, earth and other deposits, which were then and there loose and liable to cave in unless properly braced or supported.    The defendant, the Sand Coulee Coal Company, knew, prior to the time of this accident, that the roof was in this condition, or that, if it did not know such to be the condition of the roof, it would have had such knowledge if it had exercised reasonable care.    The plaintiff further charges that the defendant did not prop, brace or support the roof at this place sufficiently to prevent the same from falling of its own weight, and that its omission to so brace arose from a want of the exercise upon its part of that reasonable and ordinary care which the law requires the defendant to take for the protection of the men in its employment whose duty might call them to the entry at that place.    There being no other negligence charged against the defendant in this case, it is incumbent upon the plaintiff to establish the substance of these allegations before he can become entitled to a verdict on account of the injuries received; and hence, before you can find a verdict for the plaintiff, you must be satisfied from the evidence:    First, that the condition of the roof was such that it was in fact likely to fall of its own weight unless braced so as to support it; second, that the defendant knew, or ought to have known, and in the exercise of reasonable care would have learned, of such condition prior to the accident; third, that the defendant omitted to prop-

erly brace and support the roof; fourth, that the omission to properly brace and support the roof resulted from a lack of ordinary and reasonable care on the part of the defendant in keeping the place safe; and, fifth, that the fall of the rock occurred by reason of a lack of proper bracing and support, and not from some other cause."

"No. 5.  If at the time of this accident the slate fell because the engineer, Burrell, or his assistant, McCliment, loosened the same while engaged in putting in the plugs for sights, then the fall was not occasioned in the manner or by the cause set forth in the complaint, and there would be such a variance between the allegations of the complaint as to the cause of the fall of rock and the proof respecting the cause of the fall as would make it impossible for the plaintiff to recover in this case, and your verdict would necessarily be for the defendant."

"No. 6.  If you believe from the evidence that at the time when the plaintiff received his injuries the slate falling upon him was picked or pried from the roof by one of the persons who was engaged in putting in plugs for sights in the roof, then there would be such a variance between the evidence as to the cause of the fall of the rock and the allegations in the complaint as to the cause of the fall as would make it necessary for you to return a verdict for the defendant, since the plaintiff in this case must recover in this case, if at all, by proving that the fall of the rock was occasioned solely by lack of proper support of the roof.  Whether the defendant in this action could, under a different complaint, be held liable in damages for the injury sustained by plaintiff upon the proof of the pulling down of the slate by McCliment or Burrell while engaged in putting in the plugs for sights, is a question that is not to be determined in this case, and it is not for you, in consideration of this evidence, to consider whether the defendant ought or ought not to be held liable for the injury if it arose in that way."

Instruction No. 1 was erroneous and prejudicial to the plaintiff.  It misstates the allegations of the complaint, in that it tells the jury that the plaintiff charges that the defendant did

not sufficiently prop, brace or support the roof at the place where plaintiff was hurt to prevent the same from falling *of its own weight,* and further says that, before plaintiff can recover, the jury must be satisfied from the evidence that "the condition of the roof was such that it was in fact likely to fall of its own weight unless braced so as to support it." The complaint did not allege that the defendant failed to "prop," etc., "the roof  *  *  *  sufficiently to prevent the same from falling of its own weight." The complaint did not confine the danger to the possible falling of the roof "of its own weight," but charged that the defendant, knowing, etc., "did wholly fail to keep safe, or reasonably safe, the place where said plaintiff was at work," and "did fail and neglect to properly or at all brace or prop up the roof of the said main entry, tunnel or hallway wherein it was the duty of said plaintiff to be to remove said cars in the discharge of his duties as such servant, but said defendant did suffer the said roof of said main entry, tunnel or hallway then and there where said plaintiff was required to be in the discharge of his duties, and where said cars were then standing as aforesaid, to be and remain in an unsafe condition, and liable to fall or cave in;" and alleged further that said roof "then and there loose and liable to cave in (unless the same was propped and braced as aforesaid) did then and there cave in and fall upon this plaintiff, crushing, wounding," etc. These allegations are broad enough to permit evidence of concurrent causes, if one of such concurrent causes be the unsafe condition of the roof, due to neglect of the defendant, and the other the act of such helper to the engineer, who was engaged in trying to put in a plug in a roof which should, presumably, have been safe enough to have plugs put into it in the ordinary course of coal mining business, without any reasonable expectation of its falling or caving in upon a workman 20 or 25 feet distant. The complaint did not, by its terms, or by any logical inference, exclude all causes except gravity pulling down unsupported loose material. Therefore the instruction is wrong, and prejudicial to plaintiff, in saying that, before the jury can find a

verdict for plaintiff, it must find that "the condition of the roof was such that it was in fact likely to fall *of its own weight* unless braced so as to support it." Gravity might not alone have brought the material down if the assistant to the engineer had not jarred or disturbed it by attempting to prepare a place for a plug some 20 or 25 feet away.

It was for the jury to find from the evidence whether or not negligence of the defendant in leaving the roof in an unsafe condition, concurrently with the act of the assistant, caused the caving in of the roof to the injury of plaintiff; and we think that the allegations of the complaint would support a finding that negligence of the defendant was a proximate cause,—if the jury should believe the evidence sufficient to warrant them in arriving at such a conclusion.

Where an injury is the result of two concurring causes, the party responsible for one of them is not exempt because the person who is responsible for the other cause may be equally culpable. (*Lake* v. *Milliken,* 62 Me. 240, 16 Am. Rep. 456, and numerous cases cited; 1 Sutherland on Damages, p. 64, and cases cited; *Coppins* v. *N. Y. Central & Hudson River Railroad Co.,* 122 N. Y. 557, 19 Am. St. Rep. 523, 25 N. E. 915, and other New York cases cited; 16 Am. & Eng. Enc. Law (1891) pp. 440, 441, text and notes, and cases cited.)

It was for the jury to determine whether the defendant might, from knowledge of the condition of the roof, have reasonable anticipated, or with the exercise of reasonable care and prudence might have known, that the roof was in such a condition as to give it reasonable grounds for anticipating the very consequences which did happen concurrently with the attempt to place the plugs, and it was error for the court to confine the jury to consideration of the single question whether "the condition of the roof was such that it was in fact likely to fall of its own weight unless braced so as to support it."

The above remarks apply also to instructions numbered 5 and 6, which are erroneous, and prejudicial to the plaintiff.

There is nothing in the other instructions to offset the vice of the ones criticised.

It is not necessary to consider the other errors assigned, except to say that the views expressed in this opinion will be sufficient for the guidance of the court below upon a new trial.

We cannot agree with counsel for respondent in his contention that upon the undisputed evidence a verdict should have been directed for the defendant upon the ground of failure of proof. In considering such a question we must, as frequently decided by this Court, assume the truth of the evidence tending to support plaintiff's case, and regard it in the light most favorable to him; for so the jury might have regarded it if the jurors had not been so erroneously instructed by the court as to practically prevent any consideration by them of plaintiff's case.

The order denying the motion for a new trial is reversed, and the cause remanded.

*Reversed and Remanded.*