# HOLLINGSWORTH ET AL., RESPONDENTS, *v.* DAVIS-DALY ESTATES COPPER CO., APPELLANT.

(No. 2,571.)

(Submitted November 28, 1908.   Decided January 18, 1909.)

[99 Pac. 142.]

*Personal Injuries—Death by Negligence—Master and Servant—*
*Mines—Safe Place to Work—Ways—Complaint—Sufficiency.*

Personal Injuries—Master and Servant—Defect of Construction—Knowledge
of Master—Complaint.
  1.   Where from the complaint in an action to recover damages for the death of a servant claimed to have been due to the negligence of the master, it appears that an alleged defect in a way, made use of by the defendant's employees, was a defect of construction, an allegation of the employer's knowledge of the defect is not required.
Same.
  2.   An allegation that defendant's employer negligently permitted a. way over an abandoned shaft to become unsafe and dangerous, and negligently left the ground around the shaft loose, unstable, and of inadequate cohesiveness to sustain the weight of an ordinary man, and negligently put good boards across the timbers, thereby inviting the deceased to cross over, was a sufficient averment that defendant had notice of the dangerous condition of the shaft.
Same—Evidence—Admissibility.
  3.   Evidence that steam was injected through an exhaust pipe into an abandoned shaft, alleged to have been insufficiently timbered and the ground surrounding which negligently "left loose" by defendant company, and in walking over which an employee was killed by falling.

| 38 | 143 |
| f38 | 363 |
| 38 | 479 |
| 38 | 535 |

| 38 | 143 |
| d39 | 63 |

| 38 | 143 |
| 41 | 242 |

| 38 | 143 |
| 40 | 9 |
| 40 | 229 |
| 40 | 529 |

into it, was properly admitted under the allegations of the complaint. The effect of steam on the loose ground was competent to be shown.

Same—Opinion—Evidence—Admissibility.

4. A miner, who had testified that he examined the shaft the morning after the deceased fell into it, and could see no evidence of any timbering, was properly allowed to answer a question whether, from his knowledge based upon such examination, he could say whether any timbers were beneath the collar of the shaft on the day before the accident.

Same—Evidence—Custom.

5. The inquiry whether the method pursued by defendant company in making loose dirt and decomposed granite secure around the abandoned shaft was the one commonly used in the community was not objectionable.

Same—Children of Legal Age—Pecuniary Loss by Death of Parent—Instructions.

6. Section 6486, Revised Codes, not limiting the right of recovery for the death of a parent to minors, it was for the jury to say, under the evidence, whether the children of the deceased, both of legal age, suffered damage through the death of their father, and what sum would compensate them; and an instruction to the effect that the jury in arriving at their verdict could not consider any loss of comfort, society or protection of the father was correctly refused.

Same—Knowledge of Defect by Servant—Instructions.

7. In an action to recover for the death of a servant by reason of the negligence of the master in failing to provide him with a safe place in which to work, the question is not whether the deceased had equal means with the master of knowing the conditions existing, but whether, in the light of all the surrounding circumstances, he appreciated the danger; and therefore the refusal of the court to submit an instruction that if the servant had equal means of knowledge with the defendant of the danger, he was guilty of contributory negligence and assumed the risk, was proper.

*Appeal from District Court, Silver Bow County; Jeremiah J. Lynch, Judge.*

ACTION by Mamie J. Hollingsworth and others against Davis-Daly Estates Copper Company and others. From a judgment in favor of plaintiffs and an order denying it a new trial, the company appeals. Affirmed.

*Mr. Charles R. Leonard,* and *Messrs. Clayberg & Horsky,* for Appellant.

Where a plaintiff alleges specific acts of negligence in his complaint, he is restricted in his proof of negligence to the acts, facts and specific negligence alleged. (*Pierce* v. *Great Falls & Canada Ry.,* 22 Mont. 445, 56 Pac. 867; *Nolan* v. *Montana Central Ry.,* 25 Mont. 107, 63 Pac. 926; *Kelly* v. *Northern Pac.*

*Ry. Co.*, 35 Mont. 243, 88 Pac. 1009; *Cherokee etc. Co.* v. *Wilson*, 47 Kan. 460, 28 Pac. 178; *Atchison etc. Ry. Co.* v. *Irwin*, 35 Kan. 286, 10 Pac. 820; *Santa Fe etc. Ry. Co.* v. *Hurley*, 4 Ariz. 258, 36 Pac. 216; *Woodward* v. *Oregon Ry. & Nav. Co.*, 18 Or. 289, 22 Pac. 1076; *Waldhier* v. *Hannibal & St. Joseph Ry. Co.*, 71 Mo. 514; *Edens* v. *Hannibal & St. Joseph Ry. Co.*, 72 Mo. 212; *Field* v. *Chicago etc. Ry. Co.*, 76 Mo. 614; *De La Mar* v. *Herdcley*, 157 Fed. 547, 85 C. C. A. 209; *Batterson* v. *Chicago Grand Trunk Ry. Co.*, 49 Mich. 184, 13 N. W. 508; *Lakin* v. *Ry. Co.*, 15 Or. 220, 15 Pac. 641; *Thomas* v. *Georgia etc. Banking Co.*, 40 Ga. 231; *Long* v. *Doxey*, 50 Ind. 385.)

The burden of proof was upon plaintiff to show that appellant was guilty of the negligence alleged, and that such negligence was the proximate result of Hollingsworth's death. The rule of a burden of proof is not satisfied if the evidence discloses that the existence of the facts to be proven rests merely on conjecture. The jury may not arrive at their verdict upon their mere conjecture or guess. This doctrine is so firmly established in the jurisprudence of the United States, and is based on such strong reasons and logic, that any contrary doctrine cannot be considered. It has been announced by this court in the following cases: *Shaw* v. *New Year Mines Co.*, 31 Mont. 138, 77 Pac. 515; *Olsen* v. *M. O. P. Co.*, 35 Mont. 400, 89 Pac. 731; *McGowan* v. *Nelson*, 36 Mont. 67, 92 Pac. 40; see, also, *Patton* v. *Texas & Pacific Ry. Co.*, 179 U. S. 658, 21 Sup. Ct. 275, 45 L. Ed. 365; *Hansen* v. *Seattle Lumber Co.*, 31 Wash. 604, 72 Pac. 457; *Armstrong* v. *Town of Cosmopolis*, 32 Wash. 110, 72 Pac. 1038; *Hughes* v. *Cincinnati etc. Ry. Co.*, 91 Ky. 526, 16 S. W. 275; *Reidhead* v. *Skagit County*, 33 Wash. 174, 73 Pac. 1118; *Hyer* v. *City of Janesville*, 101 Wis. 371, 77 N. W. 729; *Hayes* v. *Forty Second St. etc. R. R. Co.*, 97 N. Y. 259; *Peterson* v. *Union Iron Works*, 48 Wash. 505, 93 Pac. 1077; *Olmstead* v. *Hastings Shingle Mfg. Co.*, 48 Wash. 657, 94 Pac. 474; *Leonard* v. *Miami Min. Co.*, 148 Fed. 827, 78 C. C. A. 517; *Corcoran* v. *Boston & Albany Ry. Co.*, 133 Mass. 507; *Chandler* v. *New York etc. Ry. Co.*, 159 Mass. 589, 35 N. E. 89; *Manning* v. *Chi-*

*cago etc. R. R. Co.*, 105 Mich. 260, 63 N. W. 312; *Musbach* v. *Wisconsin Chair Co.*, 108 Wis. 57, 84 N. W. 36; *Deschenes* v. *Concord etc. Ry. Co.*, 69 N. H. 285, 46 Atl. 467; *Fitzgerald* v. *New York Cent. & H. Ry. Co.*, 154 N. Y. 263, 48 N. E. 514; *Sorenson* v. *Menasha Paper & Pulp Co.*, 56 Wis. 338, 14 N. W. 446.

*Messrs. Maury & Templeman,* and *Mr. S. T. Hogevoll,* for Respondents.

A servant does not assume the risks of dangers from a latent defect. (*Salem Stone Co.* v. *Tepps,* 10 Ind. 519, 38 N. E. 228; *Pittsburgh etc.* v. *Woodward,* 9 Ind. App. 169, 36 N. E. 442; *Gutridge* v. *Missouri etc.,* 105 Mo. 526, 16 S. W. 943; *O'Mellia* v. *Kansas etc.,* 115 Mo. 217, 21 S. W. 503; *Soeder* v. *St. Louis etc.,* 100 Mo. 673, 18 Am. St. Rep. 724, 13 S. W. 714; *Benham* v. *Taylor,* 66 Mo. App. 308; *Bailey* v. *Rome etc.,* 139 N. Y. 302, 34 N. E. 918; *Fluhrer* v. *Lake Shore etc.,* 121 Mich. 212, 80 N. W. 23.)

"The master must take into account the properties of such substances as he employs for the purposes of his business and the operation of familiar physical laws upon these substances." (Labatt on Master and Servant, secs. 141, 298, 299.) He is chargeable with knowledge that all instrumentalities deteriorate, more or less rapidly, while they are being used (*Honifius* v. *Chambersburg Eng. Co.*, 196 Pa. 47, 46 Atl. 259); that timber which is constantly kept in a damp condition will be apt to grow rotten (*Malone* v. *Hathaway,* 3 Hun (N. Y.), 553); that banks of earth disintegrate if exposed alternately to a freezing and thawing temperature (*Holden* v. *Fitchburg R. Co.*, 129 Mass. 268, 37 Am. Rep. 343; *Deweese* v. *Meramec Iron Co.*, 54 Mo. App. 476; s. c. 128 Mo. 423, 31 S. W. 110).

It is not necessary that all theories inconsistent with negligence be excluded in order that the doctrine of *res ipsa loquitur* may be invoked. (*Clarke* v. *Nassau Electric etc. Co.*, 9 N. Y. App. Div. 51, 41 N. Y. Supp. 78.) When the maxim is properly applicable, the plaintiff does not waive the benefit of the

doctrine by going further and showing affirmatively and specifically an act of negligence.   (*Wood* v. *Roxborough*, 12 Montgomery Co. Rep. (Pa.) 155.)

Whenever a sufficient cause of an injury is shown for which the defendant is responsible, that will be deemed the true cause in the absence of any showing that there was another cause. (*Adams* v. *Young*, 44 Ohio St. 80, 58 Am. Rep. 789, 4 N. E. 599; *Milwaukee* v. *Kellog*, 94 U. S. 469, 24 L. Ed. 256.)

Where the defendant's negligence is established, and the evidence only warrants a conjecture as to the plaintiff's contributory negligence, or only warrants a conjecture as to some other proximate cause, a verdict for the latter will not be disturbed. So, also, though there may be even room for an inference that the primary cause of the injuries might have been the plaintiff's own negligence, or some other cause, the latter's right of recovery will not thereby be defeated.   (*Shannon* v. *Delwer*, 68 Minn. 138, 71 N. W. 14; *Squires* v. *City of Chillicothe*, 89 Mo. 226, 1 S. W. 23; *Rhyner* v. *City of Menasha*, 97 Wis. 523, 73 N. W. 41; *Geo. Matthews Co.* v. *Bouchard*, 28 Can. S. C. R. 580.)

The fact that the hole into which plaintiff fell was away from the place of work has no significance, for the general duty of persons to use reasonable care to keep the premises reasonably safe for all persons rightfully on the premises, and particularly for persons there by invitation, applies between master and servant. (*Irmer* v. *St. Louis Brewing Co.*, 69 Mo. App. 17; *Boyle* v. *Degnon etc. Co.*, 61 N. Y. Supp. 1043; *Belford* v. *Canada Shipping Co.*, 35 Hun (N. Y.), 347; *Eastland* v. *Clark*, 165 N. Y. 420, 59 N. E. 202, 70 L. R. A. 751.)

MR. JUSTICE SMITH delivered the opinion of the court.

This action was brought by the heirs of William Hollingsworth, Sr., against the Davis-Daly Estates Copper Company and others to recover damages for the death of William Hollingsworth, Sr., claimed to have been caused by the negligence of the defendants.

It is alleged in the complaint that the appellant company was operating the Silver King mine, in Butte, and that Hollings-

worth had been in its employ as a stationary engineer for four or five days prior to October 3, 1906. The allegation of negligence is as follows: "That it was the duty of the defendants, masters of William Hollingsworth, Sr., to use reasonable and ordinary care to the end that the place where they had William Hollingsworth, Sr., working for them, and places where they invited him during his work for them, be reasonably safe and free from danger. That the defendants, a few days before the 3d day of October A. D. 1906, had, on the surface of the said Silver King mine, for the·use of the men working for them (of which William Hollingsworth, Sr., was one), erected a toilet-house, where with decency the calls of nature were answered, and said William Hollingsworth, Sr., was tacitly by the defendants invited to use the same and go from his work at defendant's engine to said toilet-room when needful. That the defendants, failing and neglecting their duty as set out * * * herein, negligently permitted the direct way from said engine to said toilet-room to become, and the same was, on October 3 and 4, A. D. 1906, unsafe and dangerous in these respects, to-wit: In the said way, and under the same, there was an old, abandoned, insufficiently timbered, empty shaft, 60 or more feet deep, known for many weeks by defendants to be there. The defendants about a month before the 3d day of October, A. D. 1906, and about three weeks before William Hollingsworth, Sr., came to work there, had negligently timbered this shaft for only two sets (about ten feet) below the surface, and had negligently failed to fill, or timber in, or in any wise support the walls of said shaft below the depth of ten feet from surface, and, the said shaft being in surrounding loose dirt and decomposed granite, the ground for three or four feet on every side of said timbers was negligently by defendants left loose, unstable, and of inadequate cohesiveness to sustain the weight of an ordinary man when walking over the same. Furthermore, the defendants had negligently put good boards, firmly nailed across the said two sets of timbers, sufficient to sustain an ordinary man, and thereby invited William Hollingsworth, Sr., and other servants, to go over the said boards and confide in the strength of the earth around the

same. The defendants had negligently done all of the things in this paragraph mentioned, before William Hollingsworth, Sr., came to work for them, and had negligently permitted the said way to remain in this unsafe and dangerous condition until the death of William Hollingsworth, Sr., as hereinafter set forth. That about 11 or 12 o'clock of the night of October 3 or 4, A. D. 1906, the said William Hollingsworth, Sr., going between the said toilet-room and defendant's said engine, using ordinary care on his part, invited by defendant's covering over the said shaft to walk over the same, was approaching said shaft and within a foot or two of the edge of same, when the earth under him, around said timbering, caved in, and thereby, through the negligence of defendants in thus leaving the said ground insecure, said William Hollingsworth, Sr., was thrown to the bottom of said shaft and killed by the defendants.''

The appellant company by its answer denied each of these allegations and alleged, as affirmative defenses: That Hollingsworth had full knowledge of the condition of the shaft and of its dangerous character; that appellant had, prior to the third day of October, 1906 (the date of the death of Hollingsworth), used reasonable care in the repair of the shaft and had placed it in a reasonably safe condition; that it had no notice or knowledge that the shaft had become out of repair or dangerous, until the fourth day of October, 1906; that, if the shaft became dangerous or defective on the evening of the third day of October, 1906, the same was unknown to appellant; that Hollingsworth had full knowledge of the condition of the shaft and the fact that it had become dangerous on the evening of October 3, 1906, and prior to the alleged accident, and told various men working with him for appellant of its condition and advised them to notify appellant thereof immediately on the morning of October 4, 1906, and that, with full knowledge of the dangerous condition of the shaft, Hollingsworth voluntarily continued his work as engineer without any objection, and thereby assumed all risk; that it was not necessary for Hollingsworth to approach the shaft in the performance of his

duties as engineer; that he assumed all risk of danger and accident when he approached the same; that, if he approached said shaft, it was upon his own suggestion and for his own individual purposes, with full knowledge of its dangerous condition, and without any instruction from appellant or necessity in the performance of his duties; that Hollingsworth was killed because of his own contributory negligence. By replication plaintiffs denied all allegations of the assumption of risk and contributory negligence.

Upon the issues thus presented, a trial was had in the district court of Silver Bow county, which resulted in a judgment in favor of the plaintiff and against appellant company and judgments in favor of the other defendants. The appellant company made a motion for a new trial, which was overruled, and it now appeals from the judgment and the order overruling its motion for a new trial.

Upon the trial plaintiffs introduced evidence tending to show: That on October 3, 1906, Hollingsworth, Sr., was employed by the appellant as a stationary engineer in the company's engine-room at the Silver King mine; that appellant had erected a toilet-house near said engine-room for the use of its employees; that under the way to this toilet-house, and about twenty feet from the engine-room, existed a shaft about one hundred feet deep; that, prior to Hollingsworth's going to work for appellant, defendant had retimbered the upper part of the shaft, covering it with boards and dirt; that on the evening of October 3, 1906, at about nineteen minutes to 11 o'clock, Hollingsworth left the engine-room, saying that he was going to the toilet; that the next time Hollingsworth was seen he was discovered dead at the bottom of the shaft; that the shaft had caved from the surface all around the collar, and the timbers below the collar set had fallen into the shaft.

Plaintiffs' witnesses Murphy and Hoadley testified that there were no timbers in this old shaft, except for the upper ten feet; but witness Sutton testified that the shaft had been timbered from the bottom since 1898; that he went down this shaft in

1905, and then covered it up and considered it safe. Plaintiffs also introduced evidence, over appellant's objection, that some few days prior to the third day of October, 1906, appellant had caused the exhaust pipe from its engine to be turned into this old shaft, and that steam condensing therein had a tendency to swell the timber and render the ground soft.

At the close of plaintiffs' testimony, appellant moved for a nonsuit, which motion was overruled. Appellant then introduced evidence tending to show: That the old shaft was not covered when it took possession of the property, but that it at once covered the same with planks; that some time prior to October 3, 1906, appellant's foreman went down the shaft and found it in a safe condition, except as to the first set of timbers; that he made a thorough examination and then bulk-headed the upper part of the shaft with timbers eight inches by eight inches; that he put in one new set and timbered it solid, covering it with two-inch plank. This witness testified that where, in the two top sets, the old timbers were decayed, they were replaced with new timbers; that before the shaft was closed up it was put in good condition; that when the witness went down the shaft it was for the purpose of seeing if it was safe; that the foreman inspected the shaft about 4 o'clock P. M. of October 3, 1906, and found everything was all right.

The learned counsel for the appellant state in their brief that there are three important questions involved in the appeal, as follows, as they claim: (1) The complaint does not state facts sufficient to constitute a cause of action; (2) the record contains no evidence of the negligence alleged in the complaint; (3) the record discloses no evidence that Hollingsworth's death was the proximate result of any negligence or other act of appellant. We shall examine the questions in the foregoing order.

1. It is contended that there is no allegation in the complaint that the defendant had knowledge of the dangerous condition of the shaft. The allegation is that the shaft was old, abandoned and insufficiently timbered. The natural deduction from this allegation is that the shaft was no longer used for the pur-

poses for which it was constructed. It is further alleged that, prior to the time at which Hollingsworth became an employee of the company, the defendant had in a negligent way retimbered this shaft for a distance of about ten feet below the surface, and had negligently failed to fill or timber in, or in any way support, the walls of the shaft below that depth, and had then placed good boards across the top and invited its servants to cross the same. We do not regard this allegation as amounting in any sense to a statement that, having discovered a defect or imperfection in the shaft, the defendant had repaired the same, but rather as an averment of new work upon the shaft in the way of construction, in order that defendant's purpose of making a way across it might be carried out. Viewed in this light, the complaint does not fall within the rule laid down in *Fearon* v. *Mullins,* 35 Mont. 232, 88 Pac. 794, but rather within this rule: Where it appears from the complaint that the defect is a defect of construction, an allegation of the employer's knowledge of the defect is not required. (6 Thompson on Negligence, sec. 7529; *Salem Stone & Lime Co.* v. *Griffin,* 139 Ind. 141, 38 N. E. 411.) But even though we regard the complaint as alleging that the shaft had become defective, the case differs from *Fearon* v. *Mullins, supra.* In that case there was an allegation that defendant knew there was an opening in the porch, but that he had covered it up with light boards, and there the pleader stopped. This court held that the complaint should set out the facts showing wherein the danger consisted, also the causal connection between the defective place and the injury, and should allege that the master had, or ought to have had, knowledge of the efficient cause of the injury.

In the complaint before us there is an allegation that the defendant negligently permitted the way from the engine to the toilet-room to become unsafe and dangerous, and negligently left the ground for three or four feet on every side of the timbers loose, unstable, and of inadequate cohesiveness to sustain the weight of an ordinary man, and negligently put good boards across the timbers, thereby inviting the deceased to cross over.

Mr. Thompson, in his work on Negligence, says that knowledge by the defendant is generally regarded as sufficiently averred by an allegation that the defendant negligently permitted appliances to become defective, and negligently suffered them to remain in a defective condition (6 Thompson on Negligence, sec. 7529, and cases cited), and we adopt this as a reasonable, logical and good rule of pleading in this state.

2. The second claim of the appellant is that there is no evidence in the record of the negligence alleged in the complaint. The allegations of the complaint are quoted above. They are specific. Was it error for the trial court to allow plaintiffs to introduce evidence that steam was injected into the abandoned shaft through the exhaust pipe from the engine, or should that testimony have been excluded as comprehending a ground of negligence not pleaded? We think the testimony was properly admitted. This testimony discloses somewhat of uncertainty as to when the steam was first turned into the shaft. Probably it was after the deceased entered the employ of the appellant. Assume that it was. Plaintiffs allege that the shaft was in surrounding loose dirt and decomposed granite. They then proceed to charge—and this, in the light of the testimony, is the substantial grievance complained of—that the ground for three or four feet on every side of the timbers was negligently left loose, unstable, and of insufficient cohesiveness to sustain the weight of a man. The question of negligence, as arising from the condition in which the surrounding ground was left by the appellant, could only be solved by an inquiry as to what use was to be made of that portion of the property. If, for instance, the place was one that was not thereafter to be used or where no employee had any necessity or was permitted to go, then the same degree of care would, probably, not be required of the defendant in protecting the mouth of the shaft, as would be the case under the conditions disclosed by this record. Plaintiffs particularly allege that deceased was invited to confide in the strength of the earth about the shaft. If the shaft had been in solid granite, the action of the steam would probably

have had no effect upon it. The jury had a right to determine whether the appellant was in fact negligent in leaving the earth about the shaft in the condition pleaded, in view of the location of the shaft with reference to other parts of the plant and the use to which the same was to be put. They might well have decided that, if appellant contemplated turning steam into the shaft, it was its duty to first put the loose ground about the collar of the shaft in such condition as that it would not be affected by the action of the steam. This consideration accentuates the importance of the allegation that the ground was by the defendant negligently "left loose" before Hollingsworth was employed.

The case of *Freeman* v. *Sand Coulee Coal Co.*, 25 Mont. 194, 64 Pac. 347, presents practically the same principle as that involved in this case. The plaintiff in that case alleged that the roof of a coal mine was unsafe and liable to fall and that the defendant negligently failed and neglected to brace or prop the same. The evidence showed that, while an engineer's assistant was engaged in cutting out a piece of slate from the roof, with a pick, in order to find substance sufficiently solid to hold a plug, he knocked a prop out from under the piece of slate upon which he was at work, "and the whole thing came down." This court said: "It was for the jury to find from the evidence whether or not negligence of the defendant in leaving the roof in an unsafe condition, concurrently with the act of the assistant, caused the caving in of the roof to the injury of plaintiff; and we think that the allegations of the complaint would support a finding that negligence of the defendant was a proximate cause,—if the jury should believe the evidence sufficient to warrant them in arriving at such a conclusion. * * * It was for the jury to determine whether the defendant might, from knowledge of the condition of the roof, have reasonably anticipated, or with the exercise of reasonable care and prudence might have known, that the roof was in such a condition as to give it reasonable grounds for anticipating the very consequence which did happen concurrently with the attempt to place the

plugs, and it was error for the court to confine the jury to consideration of the single question whether 'the condition of the roof was such that it was in fact likely to fall of its own weight unless braced so as to support it.' "

We are also of opinion that any testimony that tended to prove that the earth, as left by the appellant about the collar of the shaft, was loose, was competent testimony, and, if that fact could be proved by showing the effect of the steam that was actually injected into the shaft, then plaintiff was entitled to make such proof.   The turning in of the steam was one of the circumstances surrounding the matter under investigation and tending to substantiate the allegation that the defendant "negligently permitted the said way to remain in this unsafe and dangerous condition until the death of William Hollingsworth, Sr."

3. Does the record contain any evidence that Hollingsworth's death proximately resulted from any negligent or other act of the appellant?   Under the above interrogatory, it is argued that there is no evidence that the acts of the appellant, alleged and proven, were the proximate cause of Hollingsworth's death. The principle invoked in the following cases is confidently relied on, viz.: *Shaw* v. *New Year Gold Mines Co.,* 31 Mont. 138, 77 Pac. 515; *Olsen* v. *Montana Ore Pur. Co.,* 35 Mont. 400, 89 Pac. 731; *McGowan* v. *Nelson,* 36 Mont. 67, 92 Pac. 40; *McAuley* v. *Casualty Co.,* 37 Mont. 256, 96 Pac. 131.   And a somewhat analogous principle is also found in the case of *Howie* v. *California Brewery Co.,* 35 Mont. 264, 88 Pac. 1007, which was not a negligence case.   Those cases, however, are in their facts clearly distinguishable from this case.   In the Shaw Case, the plaintiff claimed that the accident was caused by the explosion of blasting powder left in a hole in the mine by direction of defendant's foreman, of the existence of which deceased had no knowledge.   It was held that there was no testimony to show that that charge of powder caused the explosion.   In the *Olsen Case,* there was no testimony to connect the defendant company, or any of its officers, with the explosion of powder which caused

the death of plaintiff's intestate, and no testimony as to who in fact exploded the powder, or how or why the explosion took place. In the *McGowan Case,* the court said: "From the foregoing statement of plaintiff's evidence, it will be seen that no testimony was offered showing how the accident occurred. The planks fell, but there was no testimony as to how they happened to fall—whether by reason of the negligence of the defendants in allowing them to be improperly piled or piled in an unsafe place, or in an unsafe or dangerous manner, or by reason of the negligence of some fellow-servant of the plaintiff in handling the planks." The *McAuley Case* was founded in contract. Plaintiff's wife was insured against injuries effected solely through external, violent, and accidental means which should, directly and independently of all other causes, result in loss of life, and he was unable to prove the exciting cause of the action of the erysipelas that resulted in her death. In the *Howie Case,* the defendant was sued in trespass for tearing down a wall alleged to have been situated upon plaintiff's land. Plaintiff was unable to prove where the wall stood, and, of course, he failed in his action.

Numerous cases from other states are also cited in which the principle laid down in the Montana cases is applied, but in some of these latter cases, as we think, the facts presented did not warrant the conclusion reached by the court; but in this case we cannot agree that the relation of cause to effect is wanting, or that it is one of those instances where the testimony is equally consistent with the existence or nonexistence of negligence on the part of the defendant. We venture to say this, because there is practically no dispute as to the physical conditions existing about the mouth of the shaft before and after Hollingsworth left the engine-room. The shaft was about twenty feet from the engine-room, and the closet was about the same distance from the shaft. The plank flooring was covered with dirt, and all of the men employed there were in the habit generally of walking over it, following a trail from the engine-room to the closet. About 11 o'clock, on the night in question, deceased,

who was a sober, industrious man, forty-seven years of age, left the engine-room, saying he was going to the toilet. He never returned. Upon search being made for him, it was discovered that the ground about the shaft had begun to give way, and steam was arising from it in two places. The next morning it had the appearance of a funnel-shaped hole twenty or thirty feet across, all around, looking "as though it had given down in a funnel shape; that what had been sustained granite had caved in." Prior to 10:30 o'clock on the night in question, the ground around the shaft was in apparently good condition, but at about that hour one of plaintiffs' witnesses saw it. The following is a part of his testimony, in narrative form: "That the steam was blowing out there, and the wind was blowing it from the north; that he (witness) jumped over the hole; that he couldn't see it before he got to it on account of the steam; that he had not seen steam coming up in that locality before that night that he knew of; that he did not go into the same hole Hollingsworth went into the following morning, but that he could see into it; that he could see fifty or sixty feet down (the following morning) ; that (at 10:30 P. M.) there was a hole on the south side of the shaft; that it was a dark night, as well as he could remember, but he couldn't tell much about it there, as there was so much electric light close to the glass that it was blacker than,—he couldn't say what; that the only light he could find was the engineer's electric light, and when he left the engine-room he walked out in the darkness with the light behind him in the engine-room, in one window, and that was sixteen-candle power; that he got within about three feet of the shaft before he saw the steam; that when he returned by another route to the engine-room, he said, 'Boys, if any of you go out to the toilet to-night, look out for that darn thing' (he does not recall who was there at the time) ; that he found the hole on the north side of the shaft; that he jumped the hole on the south side, or he would have gone down where Hollingsworth did; that he didn't see any hole on the south side, but that he jumped and missed that hole on the south side; that he didn't see any hole

on the south side, but there was one there in the morning; that he found a hole on the north side, but he didn't know whether it was a hole or not; that he thought it was a slip like a man would make when the timbers were caving in a little when the ground is settling." When he returned to the engine-room, Hollingsworth was not there. There was testimony on the part of the defendant that Hollingsworth said he knew the ground about the shaft had caved, having been so informed by the pump-man, and .that he told others to be careful and said the matter must be reported to "the boss" in the morning. This testimony, however, was of such a nature, viewed in the light of the cross-examination of the witness and the testimony of other witnesses, that the jury may not have believed it. There was also testimony introduced by both sides that the caving in was gradual; the holes enlarging with the passage of time. The night was sufficiently dark to make it necessary, or at least advisable, for the employees to carry a lantern or candle in order to see about them. About 8 o'clock the following morning the body of Hollingsworth was found at the bottom of the shaft. He was dead. There was no testimony of any marks or injuries upon the body. .For several days prior to the death of Hollingsworth steam had been continuously injected into the shaft through the exhaust pipe, which was eighteen inches under the ground, and there was testimony that such steam, condensing upon or about loose ground, would have a tendency to make it drop down into the shaft. A witness testified that he had never seen steam arising from about the collar of the shaft before that night, and that a box or ventilator had been constructed through which the steam found its way to the surface. This witness also testified that he had a light and could see the steam arising; but, he said, if he had had no light, he could not tell whether he could have seen the steam or not. Hollingsworth was employed at the engine-room when the exhaust pipe was laid into the shaft.

We are of opinion that the jury were justified in finding, from the foregoing testimony, that Hollingsworth accidentally fell into the shaft, and that the opening into which he fell was

caused by the negligence of the defendant in allowing the ground about the collar to be in such a loose condition that it would not sustain the weight of a man, that it caved by reason of the action of the steam upon it, and that in attempting to pass across it Hollingsworth fell to his death. No conjecture or speculation is necessary to reach this conclusion, but, on the contrary, the jury would have been obliged to go outside the testimony and into the field of conjecture to reach any other. Neither was it necessary, under this testimony, to choose between different theories as to how death might have been caused. Whether the hole into which deceased fell was made by his own weight, or was there before he attempted to cross, is not material to the inquiry into this feature of the case. Ordinary knowledge and experience, applied to the testimony, would lead any reasonable man to believe just as this jury believed. The question for them to decide was: Does the testimony disclose an efficient cause of death, reasonably deducible from the circumstances proven, exclusive of any other cause inferable from or suggested by this same testimony? The jury found that it did, and we think the testimony was sufficiently substantial and definite in character to justify the finding.

4. Other less fundamental errors are assigned:

(a) Plaintiffs' counsel asked their witness Murphy this question: "Mr. Murphy, can you say whether, basing your knowledge, if you have any knowledge, on your examination of that shaft on the morning of the accident, can you say whether any timbers were beneath the collar of the shaft on the day before?" Counsel for appellant objected to the question being answered unless it was first shown that witness had knowledge of the condition before the accident. The answer was: "Well, from the condition of the shaft, as I saw it, any miner of any experience at all would say that you couldn't see where there were any timbers outside of the collar set." Murphy was a miner. His answer amounts to a statement that he saw no evidence of any timbers below the collar set and no evidence of any having been there the day before. This witness had already testified, with-

out objection, that when daylight came he could see into the shaft distinctly, that he could not see any timbering at all, that "there was none whatever," that he never found any timbering at all below the collar set, that from what he could see there were no timbers in the shaft, that he was standing on the rim of the shaft, and could see "possibly to the bottom of it." In the light of this testimony, we see no error in the ruling of the court in any view of the competency of the question to which exception was taken.

(b) The foregoing also applies to the ruling of the court in allowing Murphy to testify that, from the appearance of the shaft the next morning, he would say that there had been no timbers beneath the collar set.

(c) This same witness was asked: "What method, if any, is known and used in this community to make dirt and rock around the empty space of the shaft sustain it?" Counsel objected to the question on the ground that it was incompetent under the pleadings in the case, and for the further reason that the witness had testified that he did not know anything about the condition of the shaft until the next morning. The court overruled the objection, and the witness answered: "Well, in such cases, where you have to protect a shaft there, they usually use heavy plank and logging and run it all the way around." We doubt whether the objection was so stated to the trial court as to put it in error in any event, but we find it argued in the brief and will consider it. Counsel contend: "The rule is, did the defendant exercise reasonable care in the repair of the shaft to make it reasonably safe, and not what the method was in use in the community to make the dirt and rock around the empty space of the shaft sustain it. It is no matter what method is usually employed, if the method pursued by the appellant discloses the fact that it used reasonable diligence to protect the shaft from caving and render it reasonably safe." But the question to be decided was: Was the method employed by the appellant reasonably safe? In the case of *Boyce* v. *Wilbur Lumber Co.*, 119 Wis. 642, 97 N. W. 563, the court said: "Inasmuch as negligence

ordinarily consists simply of lack of ordinary care, and ordinary care is that care which the great majority of people are accustomed to exercise under the same or similar circumstances, it was, in substance, held in *Guinard* v. *Knapp-Stout & Co. Company*, 95 Wis. 482, 70 N. W. 671, that in determining whether an employer was negligent in furnishing an unsafe place to work, because of the proximity of uncovered machinery, the test was whether the defendant had come up to the standard of employers generally in the same business and under similar circumstances, and this test has been approved several times since that decision was rendered.''

Mr. Labatt, in his work on Master and Servant (section 52), has this to say: ''The courts not infrequently employ language which, if taken literally, would seem to embody the doctrine that nonconformity to common usage implies negligence, as a matter of law. But an examination of the cases in which expressions of this sort occur will show that they merely amount to somewhat, loose statements of a rule which may be enunciated more accurately as follows: The master's negligence is a question for the jury whenever it is warrantable to infer from the evidence that the injury would not have been received if a certain instrumentality or method had been substituted for that actually adopted by the defendant, and that this alternative instrumentality or method was one commonly used by other employers in the same line of business under similar circumstances. This rule is applied both by the courts which do, and by the courts which do not, accept the doctrine that conformity to common usage is a conclusive defense.'' We think this rule, as gathered from the decisions and restated by the author, is reasonable and logical, and adopt it as the law of this state. See cases cited to support the text, and, also, 6 Thompson on Negligence, section 7882, and cases cited.

(d) Instruction No. 6, given by the court, is as follows: ''Gentlemen of the Jury: If under all of the evidence and all of the instructions your verdict is for the Hollingsworth heirs and against the defendant company, then it will be your duty to

assess and write into that verdict the amount of damages which plaintiffs have sustained, if any. Before going into any such question, I charge you that there are no facts or circumstances proven in this case which would permit you to give or allow any damages as an example or to punish the company. The law reads that, if your verdict be for the heirs of Hollingsworth, you may allow such damages as under all of the circumstances of the case must be just. In that case it would not be just to allow more than compensation; that is to say, payment for the financial loss which they have sustained by reason of his death. But under the head of compensation (if your verdict is for them) you may consider any amount which Hollingsworth, Sr., would probably have earned during his life (if not cut off) and contributed to his wife and children. You may in this connection consider his capacity to earn money, his age at death, his disposition to work, his habits of life and living, and his own expenditures. In connection with the probable expectancy of life of Hollingsworth, Sr., you may also consider the age and expectancy of life of his wife with relation to his own age. You should bear in mind another matter (if your verdict is for his heirs) when you come to the consideration of allowing payment for the future earnings and contributions of the dead man. Simply multiplying his expectancy by his yearly contribution from earnings would be excessive, and not as reliable as determining what would buy with some responsible life insurance company a yearly income equal to what he would earn and contribute to them during the joint expectancy of himself and all and any of his heirs, and leave nothing at the death of any as to the allowance made on account of such as would have died before he would have died. If your verdict is for the plaintiffs, you may consider any loss of comfort, society, or protection of a father and husband, and in that case, if it was of money value, you may allow pecuniary compensation. In other words, if your verdict is for them, you must give such damages as will fully compensate them, both wife and children, for the pecuniary value to them of the life of the husband and father. Sympa-

thy and pity must not influence you in a verdict. Neither a
desire to help the plaintiffs nor to punish the defendant should
be exercised.''

Because the record discloses that at the time of the trial both
children were of legal age, appellant contends that ''they were
not entitled to further support from the deceased, as a legal
obligation on his part, and there is no method whereby we can
ascertain what, if any, damages were allowed by the jury for
said children in this charge.'' The statute provides (section
6486, Revised Codes) that an action for death of an adult caused
by the wrongful act of another, may be maintained by the heirs
or personal representatives. Section 3751, Revised Codes, im-
posed upon the father of any poor person, who is unable to main-
tain himself by work, the duty ''to maintain such person to the
extent of their ability.'' The phraseology is that of the legis-
lature. The evidence shows: That Hollingsworth was very kind
and affectionate toward his children and spent his leisure time
at home with his wife and them; that the daughter had been
sick for about a year immediately before his death, and deceased
was kind and loving to her during that time, and he ''never left
her for a moment except while at work''; that the son ''is hardly
able to take care of himself, is learning a trade, and gets small
wages.'' In view of this testimony and the fact that our stat-
ute does not limit the right of recovery to minor children, it
cannot be said that there was no proof that the children of de-
ceased had suffered damage, and, if they were entitled to any
damages at all, it was for the jury to say what sum would com-
pensate them. (See *Redfield* v. *Oakland Consolidated St. Ry.
Co.*, 110 Cal. 277, 42 Pac. 822, 1063.)

(e) The trial court struck from defendant's offered instruc-
tions relating to the defenses of contributory negligence and as-
sumption of risk the words ''or had equal means of knowledge
with the defendant thereof,'' that is, of the dangerous condi-
tion of the shaft, and this is assigned as error. There are two
phases of this matter to be considered. Instruction 12, as given,
illustrates the points involved. It reads as follows: ''If you

find from a preponderance of the evidence that the surface ground around said shaft, or on the north and south sides thereof, had caved in on the evening of the 3d of October, 1906, and at a time prior to the precipitation of William Hollingsworth, Sr., into said shaft, as alleged in said complaint, and that said William Hollingsworth, Sr., knew of said caving and the dangerous condition of said shaft, it was his duty not to approach said shaft until defendant had a reasonable opportunity to repair the same and make it reasonably safe; and if you find from a preponderance of the evidence that William Hollingsworth, Sr., approached said shaft, as alleged in said complaint, under the above circumstances, he is charged with contributory negligence, and your verdict must be for the defendant.''

The court told the jury that, if Hollingsworth knew of the caving and the dangerous condition of the shaft, it was his duty not to approach it, and, if he did approach it with such knowledge, plaintiffs could not recover. The record shows that Hollingsworth was about the premises at the time the steam pipe was laid into the abandoned shaft, and we shall assume that he knew it was there and the use to which it was put. In addition to the foregoing, defendant's witness Goff testified that Hollingsworth said he actually knew of the cave-in about the shaft, and, if what Goff said was true, Hollingsworth understood and appreciated the danger; but the jury may not have believed Goff, and evidently, considering the charge of the court and the verdict, did not. Without his testimony there is nothing in the record to indicate that Hollingsworth knew the danger arising from the fact that the ground had actually caved in. It remains to be determined, then, whether, assuming that Hollingsworth did not actually know of the cave-in, the same duty rested upon him to appreciate the situation as rested upon the defendant. It was the duty of the defendant corporation to use reasonable care to furnish and provide for its employees a reasonably safe place to work. It was the right of the servant to assume that the master had discharged this duty. So far as this particular case is concerned, this discussion is not very

pertinent, and therefore of little value, because there is no testimony in the record showing that Hollingsworth had any knowledge of the loose and unstable condition in which the ground about the collar of the shaft had been left by the defendant. Without this information, the knowledge that steam was being exhausted into the shaft would convey to him no idea that the surface of the ground could be in any way affected by the action of the steam.   As the servant owes no duty to the master with regard to the place of employment, but is chargeable with the duty of performing his work, the question, in cases like this, is not whether he had equal means with the master of knowing the conditions which existed, but whether, in the light of all the surrounding circumstances, he appreciated the danger.   (*Stephens* v. *Elliott,* 36 Mont. 92, 92 Pac. 45; *Forquer* v. *Slater Brick Co.,* 37 Mont. 426, 97 Pac. 843; *Hardesty* v. *Largey Lumber Co.,* 34 Mont. 151, 86 Pac. 29.)

(f) What has heretofore been said disposes of the questions raised by the appellant based upon the court's refusal to give its proposed instructions numbered 20, 21 and 22.

(g) Complaint is made that the trial court refused to submit to the jury for answer several interrogatories prepared by the appellant.   District courts may in all cases direct the jury to find a special verdict in writing upon any or all of the issues, and in all cases may instruct them, if they render a general verdict, to find upon particular questions of fact, to be stated in writing, and may direct a written finding thereon; but in no case shall special issues be submitted when, in the opinion of the court, a general verdict would be sufficient.   (Revised Codes, sec. 6758.)   We do not here determine whether or not error may ever be predicated upon the refusal of the trial court to submit special questions to a jury for determination; but we have no hesitancy in saying in this case, assuming that it was the duty of the court to exercise a sound legal discretion in the matter, that no abuse of discretion is disclosed by the record.

(h) The foregoing discussion disposes of all errors assigned and argued in the briefs of counsel, including those founded

upon the refusal of the court to grant appellant's motion for a nonsuit and its action in entering judgment on the verdict and refusing to grant a new trial.

The judgment and order are affirmed.

*Affirmed.*

MR. CHIEF JUSTICE BRANTLY and MR. JUSTICE HOLLOWAY concur.

