BRENNAN, Appellant, *v.* MAYO, Sheriff, et al., Respondents.

(No. 7,391.)

(Submitted September 19, 1935.  Decided October 8, 1935.)

[50 Pac. (2d) 245.]

*Mr. Walter L. Pope* and *Mr. J. C. Garlington,* for Appellant, submitted an original and a reply brief and argued the cause orally.

*Mr. W. E. Keeley* and *Mr. W. L. Hyde,* for Respondents, submitted a brief; Mr. Keeley argued the cause orally.

MR. JUSTICE STEWART delivered the opinion of the court.

This is an appeal from an order granting defendants a new trial after verdict in favor of plaintiff.

In November, 1931, the defendant Joseph A. Mayo, sheriff of Mineral county, levied on a stock of merchandise and fixtures at De Borgia. This was pursuant to a writ of execution obtained by one George R. Cooper, and directed against plaintiff's husband, E. L. Brennan. Thereafter this plaintiff, Effie Brennan, instituted this action against the defendant sheriff and his bondsman, the Aetna Casualty & Surety Company, to recover damages for the conversion of the property of which she claims she was the owner and in possession on the date of the alleged conversion. The defendants admitted the taking of the property, but denied that it was owned by the plaintiff or that she was lawfully possessed of the same or entitled to its possession. The principal question submitted to the jury was whether plaintiff or her husband was the owner of the property in question.

From the evidence it appears that in the year 1906, while plaintiff was unmarried, her mother gave her $500, with which she opened a small country store at De Borgia, Montana. She remained alone in the store until 1909, when she married E. L. Brennan. They resided in the store building. At the time of the marriage Brennan was clearing the right of way for the Milwaukee railroad, and he continued this character of work for some time afterwards. Thereafter at various times he operated a blacksmith-shop, a pack train, and a garage, and worked at any outside jobs obtainable. When at home and not engaged

in blacksmith or garage work, he helped around the store and waited on customers. Their daughter and other children helped with the store work.

Plaintiff testified that from the beginning she conducted the business and always ran and managed it; that she bought and sold goods, figured the credits and paid all the bills; that she was "the real manager of the business, that her husband never contributed anything to the value of the business, and that she was the owner thereof and had never made any transfer of any kind giving ownership to her husband." This testimony was corroborated by that of her husband and several other witnesses. Checks signed by plaintiff were introduced to show that plaintiff paid the store bills. Customers of many years' standing at the store testified that plaintiff had always referred to the business as her own. Wholesalers and business men of Wallace, Idaho, and Missoula, Montana, testified to the effect that they had dealt with the store in question for a number of years, and that they had always done business with plaintiff as owner and proprietor; that plaintiff paid their accounts; that they had never dealt with her husband, but that the accounts were usually carried in the name of E. L. Brennan.

In this connection it appears that from the time of plaintiff's marriage the store was conducted in the name of "E. L. Brennan, General Merchandise." Plaintiff explained the use of this name for the business as follows: "I thought it was just a business form to use the name of the family. There was no change in the way the business was operated from the time before my marriage until the time afterwards, it was carried on just the same way. I never made any secret of that fact." It was also shown that plaintiff was in the store and running it when the defendant sheriff came to levy on the property. At that time Brennan was in the garage at the back of the store.

The defendant sheriff testified as follows: "I went in and Mrs. Brennan was in the store, and I asked her where Mr. Brennan was, and he was working in the garage just back of the store, and I asked her to call him in and I told her what I had, and she at that time said I couldn't do that, that she was the

owner of that stock.'' He testified further that she then made a telephone call to her attorneys in Missoula; that after talking with them she told him that they advised her to let him take everything with E. L. Brennan's name on it; that accordingly he proceeded to remove the stock and fixtures, and that in the process of doing so some question arose about the ownership of certain articles among the fixtures, some of which plaintiff said were her ''personal property.''

In behalf of defendants it was shown that the billheads and stationery used by the store were in the name of ''E. L. Brennan,'' and that they announced as a part of the business ''Livery & Pack Train'' and ''Garage.'' Plaintiff admitted that all of these, except the store, were the separate property of her husband.

George R. Cooper testified that he had known the Brennan family for many years; that up to 1927 Brennan was around the store and waiting on trade all the time; and that thereafter he was around the store 75 per cent. of the time. Plaintiff denied this. Cooper also testified that plaintiff always spoke of the store as ''ours''; that Brennan claimed to own the store; that at one time a copartnership had existed between him (Cooper) and Brennan; and that Brennan had admitted putting $700 of the partnership funds into the store business. Brennan admitted that he put the $700 in the E. L. Brennan account at the bank. The evidence also showed that plaintiff and her husband kept a joint bank account; that any and all of their funds from whatever source were intermingled in the same account; and that Brennan drew checks and drew on the account. Regardless of whether the receipts were from the store, the garage, or Brennan's labor, they went into the same account, which was considered the family bank account and drawn on for family living expenses.

It was shown that the merchandise shipped to the store was addressed and billed to E. L. Brennan; that claims against Mineral county for merchandise sold out of the store were filed in the name of E. L. Brennan; that on various occasions Bren-

nan had receipted for gasoline delivered to the store gas pump; that Brennan operated a garage back of the store premises; that Brennan brought in wood to be used in the store; that up to 1930 all of the property of plaintiff and her husband was turned in to the assessor on one list in the name of E. L. Brennan; that plaintiff and her husband had once executed a mortgage together on the property in question; and that when, prior to this controversy, Cooper had sued Brennan and plaintiff, Brennan and his wife had asserted a counterclaim for the merchandise sold to the partnership (Cooper & Brennan) from the store.

While most of the facts which defendants' evidence tended to prove stand uncontradicted—in many instances specifically admitted—still plaintiff and other witnesses testifying in her behalf assumed to so explain practically all of the facts on which defendants relied as to make them appear not inconsistent with plaintiff's claim that she was the owner of the store.

The jury returned a verdict in favor of plaintiff for the sum of $1,740.20. Defendants then moved for a new trial, asserting all of the grounds enumerated in section 9397, Revised Codes 1921. The court granted the motion, and plaintiff appealed from the order. In their argument before this court defendants asserted that the evidence was insufficient to sustain the jury's verdict, and that errors of law prejudicial to them were committed at the trial, all of which, they contend, justified the granting of a new trial.

One of the grounds urged by defendants in their motion for a new trial was excessive damages. This proposition is now argued in support of the court's order. It is contended that there was a failure of proof on which to base the amount of damages as found by the jury. This contention is not borne out by the record. The inventory of the property levied upon was introduced in evidence. Positive testimony showed that it correctly itemized everything, and that $1,740.20 was the fair and reasonable value of the property listed and was the damage suffered by plaintiff. There is ample evidence to sustain the verdict of the jury, and most of the evidence on this point stands

uncontradicted. In this connection defendants complain of bias and prejudice on the part of the jury. It appears that counsel for plaintiff stated to the jury that the sheriff was indemnified, and that any judgment rendered would not cost him one penny. It is argued that this statement in itself constituted reversible error. Defendants in their answer, however, set out the fact that the sheriff was indemnified, and their own witnesses testified to that fact upon direct examination. In such circumstances defendants suffered no prejudice.

It is next contended that the court erred in giving plaintiff's offered instruction P-5, over defendants' objection. The instruction was given as "Court's Instruction No. 4." It reads as follows: "You are instructed that the law presumes that things which a person possesses are owned by her. If therefore you find from the evidence that plaintiff, Effie Brennan, was in possession of the store and stock of merchandise at the time of the levy of execution thereon, then the law presumes that she, and not E. L. Brennan, was the owner of the property." To the giving of this instruction the defendants interposed a general objection to the effect that it picked out one phase of the testimony, commented on it, and ignored other evidence which pointed to possession in Brennan. In their argument before this court they asserted an entirely new and different ground of objection to the instruction, viz., that it did not show that the presumption therein stated was rebuttable or what would be required to rebut it. Since this objection was not advanced at the time of settling the instructions, as required by section 9349, Revised Codes 1921, it was not properly available to defendants either on motion for a new trial or on appeal to this court. (See *First Nat. Bank* v. *Perrine,* 97 Mont. 262, 33 Pac. (2d) 997; *Pincus* v. *Davis,* 95 Mont. 375, 26 Pac. (2d) 986; *Outlook F. E. Co.* v. *American Surety Co.,* 70 Mont. 8, 223 Pac. 905.) In any event, the instruction, as given, is in conformity with the opinion by this court in the case of *Wray* v. *Great Falls Paper Co.,* 72 Mont. 461, 234 Pac. 486.

Complaint is made of plaintiff's offered instruction P-1, which was given over defendants' objection. It reads in part as follows: "If you believe from a preponderance of all the evidence and the other instructions given, that as between herself and her husband E. L. Brennan the plaintiff, Effie Brennan, was actually the owner of the property at the time it was levied upon and sold by the sheriff, then your verdict shall be in favor of the plaintiff and against defendants." To the giving of this instruction, the defendants interposed a general objection. They now advance and rely on a different and more specific objection, viz., that the instruction failed to bring in question a creditor's right under section 5799, Revised Codes 1921, to levy on a wife's property to satisfy her husband's debt when the creditor has been misled into thinking the property belonged to the husband. Under the authorities heretofore cited, defendants lost the right to rely on this objection by failing to assert it at the proper time. Even, however, if the objection had been timely, still we fail to see any merit in it.

Defendants offered two instructions based on the theory that a partnership existed between plaintiff and her husband. The court refused them. Defendants assert that in so doing the court erred. The court, however, correctly refused the instructions. Plaintiff alleged she was the sole and exclusive owner of the property. Defendants denied this and alleged in turn that Brennan was the sole and exclusive owner thereof. Practically all of the evidence adduced by both sides bore on this issue. Clearly the case was not tried on the theory of a partnership between plaintiff and her husband. There was no basis for any instruction on that theory. (*McDonough* v. *Smith,* 86 Mont. 545, 284 Pac. 542.)

A careful consideration of the assignments of error relating to instructions and other incidents of the trial leads us to the conclusion that no reversible error occurred in the trial of the cause. It is suggested in appellant's brief, but not in the record, that the motion for new trial was granted because of a belief that an error existed in the instructions. Though this

may be true, the record does not show it; on the contrary, it shows that the order was general. The grounds of the motion included "insufficiency of the evidence." All other assignments being insufficient or untenable, we are forced to presume that the court, in the exercise of its discretionary power, granted the motion because it was of the opinion that the evidence was insufficient to justify the finding of the jury. (*Norton* v. *Great Northern Ry. Co.*, 78 Mont. 273, 254 Pac. 165, and cases cited.)

This court has frequently enunciated the rule that the disposition of a motion for a new trial rests in the sound legal discretion of the trial court. (*Badboy* v. *Brown*, 66 Mont. 307, 213 Pac. 246; *Maki* v. *Murray Hospital*, 91 Mont. 251, 7 Pac. (2d) 228, and cases cited.) It has been held that an order of the district court, general in terms, granting a new trial will not be disturbed on appeal where there is a substantial conflict in the evidence, the presumption being that the order was made because the court deemed the evidence insufficient to justify the verdict. (*Norton* v. *Great Northern Ry. Co.*, supra; *Gardiner* v. *Eclipse Grocery Co.*, 72 Mont. 540, 234 Pac. 490.)

In the *Norton Case* this court cited with approval the language previously employed in *Bull* v. *Butte Electric Ry. Co.*, 69 Mont. 529, 223 Pac. 514, 516, as follows: "It has become axiomatic in this jurisdiction, and elsewhere, that, where the evidence is conflicting, the order of the trial court granting or refusing a new trial will not be disturbed on appeal in the absence of a clear showing of abuse of discretion. The rule and the reason for it have been stated so often that a citation of authorities is unnecessary. * * * And, while the parties are entitled to the judgment of the jury in reaching a verdict in the first instance, upon motion for a new trial they are equally entitled to the independent judgment of the court as to whether the verdict is supported by the evidence." After adopting the above principle, the court proceeded to uphold the order granting a new trial, with the statement that there was a substantial conflict in the testimony. Here appellant contends that the evidence is all in her favor, and perforce no substantial conflict could exist

therein. Respondents assert: "We can hardly conceive a case of this nature where the conflict could be greater or more substantial." These positions are both extreme, and we cannot concede either of them.

The matter resolves itself into the question, Was there a conflict in the evidence? This court has said in effect that a conflict can only exist when there is substantial conflicting evidence in the record. It has defined "substantial evidence" as evidence which will convince reasonable men, and on which such men may not reasonably differ. (*Morton* v. *Mooney,* 97 Mont. 1, 33 Pac. (2d) 262.)

The difficulty in strictly applying the quoted rule here becomes at once manifest. This is essentially true when it is understood that the parties were entitled to the independent judgment of the trial court as to whether the judgment was supported by the evidence, and that in the light of the recognized rule that the evidence as a whole includes all of the facts and circumstances adduced at the trial. In the case at bar there was presented a mass of intermingled facts and circumstances. Indeed, the circumstances of this case constitute a large part of the case. "The law makes no distinction as to probative value between direct and circumstantial evidence." (*Gilmore* v. *Ostronich,* 48 Mont. 305, 137 Pac. 378, 379; *Exchange State Bank* v. *Occidental Elevator Co.,* 95 Mont. 78, 24 Pac. (2d) 126, 90 A. L. R. 740; *Moffett* v. *Bozeman Canning Co.,* 95 Mont. 347, 26 Pac. (2d) 973; *Woin* v. *Anaconda Copper Min. Co.,* 99 Mont. 163, 43 Pac. (2d) 663.)

Here we are permitted to examine only the cold record, whereas the trial judge who granted the motion for a new trial was afforded the opportunity of seeing the witnesses and of hearing them testify. He was thus better able to understand and construe the testimony in the light of the surrounding circumstances. This fact illustrates the reason for reposing judicial discretion in the trial judge in such matters. It appears to us at this distance that the evidence adduced in behalf of the defendants was at best fragmentary, meager, and dissuasive; but

we cannot say that the trial judge, enjoying, as he did, a superior position, was without basis for a contrary conclusion. An attempt to evaluate the testimony and weigh the circumstances of the case leads us to the conclusion that it is impractical for us to say that in the facts and circumstances there was no substantial conflict in the evidence. We feel that we are forced to the position announced by the court in *Norton* v. *Great Northern Ry. Co.*, supra, wherein it was said that the court, after a like examination, was forced to state that the testimony on questions submitted to the jury was in substantial conflict.

Hence the order of the district court granting a new trial should be, and it is, affirmed.

ASSOCIATE JUSTICES MATTHEWS, ANDERSON and MORRIS concur.

MR. CHIEF JUSTICE SANDS, absent on account of illness, takes no part in the foregoing decision.