DONALD DAVIS, Plaintiff and Respondent, v. LOUISE R. SMITH, Administratrix of the Estate of HOWARD JACKSON, Defendant and Appellant.

No. 11490.
Submitted October 15, 1968. Decided December 2, 1968.
448 P.2d 133.

Corette, Smith, Dean & Wellcome, Page Wellcome (argued), Robert Corette, Jr. (argued), Butte, for defendant and appellant.

C. W. Leaphart, Jr. (argued), Helena, for plaintiff and respondent.

MR. JUSTICE CASTLES delivered the Opinion of the Court.

This is an appeal from an order granting plaintiff a new trial following a jury verdict in plaintiff's favor in the amount of $4,000. Plaintiff brought the action for the wrongful death of his son who was killed in a "one car" accident in which the driver, one Howard Jackson, was also killed. Plaintiff's son was a 15 year old sophomore in high school. The driver was a 20 year old. The estate of Howard Jackson, the defendant here, admitted liability and the case was tried to the jury on the question of damages only.

The only issue on appeal is whether the trial judge abused his discretion in granting a new trial upon the ground that damages awarded were inadequate.

The trial court did not specify grounds for a new trial; but did make a statement which, by process of elimination, left only the ground of inadequacy of the verdict. Because the brief of respondent dwells on other grounds for new trial, we use the process of elimination.

The statement of the trial judge is as follows:

"This court has always been most reluctant to interfere with the determination made by a jury in any case. However, in this case, the court is deeply concerned, and more particularly on a ground that hasn't even been mentioned by either counsel herein, and that is the admission of the evidence regarding a lawsuit that was filed by the father of the deceased boy against his uncle, which was for the sum of some $150,-000.00. This evidence was introduced by the defendant in an attempt to show the earning ability or net worth of the father of the deceased boy, projected into future years. This pleading that had been filed in this court is certainly a very speculative instrument, in that it is not a claim that is fixed

and, certain and definite as to the amount that will be received, if anything will be received by him, and the court feels that the jury must have very definitely considered this matter, and considered that in evaluating the net worth or the earning ability of the father, in determining the amount that they awarded him for the services of his minor son. I have always felt that verdicts by juries, whether they bring in an award of nothing at all, or an amount that is exorbitant, that such awards should stand. However, in this case, with an admission of liability by the defendant, and the very serious consequences of the accident, and of the actual issues involved in this case, I cannot, and I must say that I have very seriously considered this matter ever since the rendition of the judgment, and tried to view it in every light, and in every way that it could possibly be viewed, but I cannot, in all good conscience, visualize this as a realistic judgment in this case, and I cannot conceive how the jury could fix the value, under the instructions that were given them by the court, in such a ridiculously low figure. I will, therefore, grant the motion for a new trial, and order a new trial to be held in this case. If there is nothing else to come before the court this morning, court will stand adjourned."

The reference to another ground for a new trial having to do with admission of evidence of another lawsuit seems to have been uppermost in the trial court's mind. However, the evidence *was not admitted*. The trial judge sustained an objection to it. Much discussion of the other action occurred; but the record reveals that most of it was outside the presence of the jury, and the judge *did not* permit it. It is true that the plaintiff, Davis, was asked questions on cross-examination concerning his annual earnings, to which he had testified on direct, and that certain allegations from a complaint concerning those earnings were referred to. Plaintiff admitted that his testimony was inconsistent with prior sworn statements and went on to state that the complaint was in error.

Subsequently other references were made to the other lawsuit but objections were sustained. No real issue occurred. The amount of the prayer was never mentioned, the complaint was never introduced. Analyzing the entire exchange, we find nothing prejudicial.

This then leaves but one ground; that of inadequacy of the amount of damages. We think it fair to say, regarding the judge's comments, that while he termed the damages a "ridiculously low figure", his real ground was that discussed above but which did not occur.

As to the damages proven. Actual funeral expenses in the amount of $1,605 were proven.

The deceased was a high school sophomore with average to above-average grades. He was an exceptional vocational agriculture student. He was to have been given an award the night of his death for excellence in farm mechanics. He helped his father in ranch work, but except for some haying earnings, did not have any earnings.

Plaintiff, the father, was 40 years of age. He was a ranch foreman. His income from 1957 through 1964 was approximately $10,000 per year. In 1965 it was $14,200. In 1966 it was $24,200. In addition, during these years he received rent free, utilities, and some meat. From the record it can be said that plaintiff is a self sufficient man.

The primary evidence on damages is contained in the testimony of Dr. George Heliker. Dr. Heliker was qualified as an expert in economics. See our discussion of this type of opinion evidence in Krohmer v. Dahl, 145 Mont. 491, 402 P.2d 979. In the Krohmer case we referred to this type of testimony as speculative in nature; but nevertheless approved its use for the purpose of proof of future action or events and specifically for an estimation of damages based upon possible future earnings of the decedent.

Dr. Heliker on projected earnings for an average high school graduate came up with a figure of some $164,190.00 as

earnings during the father's life expectancy. On cross-examination Dr. Heliker admitted that the same average high school graduate would likely consume all of his earnings on expenses for himself, his family and his home; and that he could not testify as an expert on any amount the son would have contributed to the parent. It would seem that the jury would have been warranted in believing in all likelihood that the son would, under the circumstances in this case, be an economic detriment during his minority at least.

The trial judge's instructions on damages are not at issue here. The instructions allowed the jury to consider the following elements, in addition to funeral and related expenses which were nonspeculative:

(1) the pecuniary benefits that the father was reasonably certain to have received from the son during minority.

(2) the pecuniary benefits to be reasonably expected from the son to the father during the common expectancy of life —here 31½ years.

(3) pecuniary value of society, comfort, care, protection and right to receive support which the father lost by reason of the death.

Dr. Heliker's testimony and opinions all went to the first two matters; and, no value was placed upon any of the son's services. No earnings were shown to have ever been received by the father. The jury would also have been warranted in finding, under the circumstances here, that during the father's lifetime no indication of need, or ability to pay or contribute was shown.

As to the third item, loss of society, comfort, care and protection (the instruction on this item is not at issue), no extensive proof was made except that the son was a normal child. It is obvious that to put a monetary value on this is something solely within the province of the jury.

As an offset to these items, the jury was instructed that it could take into consideration what it would cost the father

to support his son had he lived. Right or wrong, this became the law of the case.

Now then, the rules for review by this appellate court of an order granting a new trial have been stated by this Court many times. Section 93-5603, R.C.M.1947, subdivisions 5 and 6, provide:

"5. Excessive damages, appearing to have been given under the influence of passion or prejudice;

"6. Insufficiency of the evidence to justify the verdict or other decision, or that it is against law".

Respondent emphasizes that inadequacy of damages as a ground for new trial comes under subdivision (6); that is, that there was an insufficiency of the evidence to justify the verdict. (See Flaherty v. Butte Electric R. Co., 42 Mont. 89, 93, 111 P. 348.) From this, respondent urges that the rules on appellate review are different from that involving excessive damages under subdivision 5 in that no finding of passion and prejudice is required.

In State Highway Comm. v. Greenfield, 145 Mont. 164, 171, 172, 399 P.2d 989, 992, we reviewed the rules as follows:

"For a long while appellate courts were very reluctant to review an order granting or denying a motion for a new trial because it was felt that the discretion of the trial judge ought not be disturbed except for manifest abuse thereof.

"Insofar as the granting of a new trial is concerned the Montana rule was recently reiterated in Estate of Cocanougher, 141 Mont. 16, 375 P.2d 1009, wherein our court stated: (Omitting double quotations.)

" 'In Herren v. Hawks, 139 Mont. [440], 365 P.2d 641, 643, we considered the granting of new trials as follows:

" 'There are several well-established rules governing the granting of new trials. Innumerable cases in this state have laid down the general rule that the granting of a new trial is within the sound discretion of the trial court.

" 'In Garrison v. Trowbridge, 119 Mont. 505, 506, 507, 177 P.2d 464, 465, this court said:

" 'In considering the propriety of the court's ruling in granting the new trial, we keep in mind that, the granting, or refusal to grant, a motion for a new trial lies within the sound discretion of the trial court, and its order thereon will be reversed only for manifest abuse of that discretion. * * *

" 'An order, general in its terms, granting a new trial, will be upheld if it can be sustained on any ground stated in the motion therefor, and such an order will not be set aside as readily as an order denying a new trial, since the latter ends the case, whereas the former merely restores the parties to the position they occupied before the trial. Maki v. Murray Hospital, 91 Mont. 251, 260, 7 P.2d 228, 230. To the same effect is Walsh v. Butte, Anaconda etc. R. Co., 109 Mont. 456, 97 P.2d 325. A stronger showing is required to justify interference with an order granting than one refusing a new trial. Collins v. Hodgson, 5 Cal.App.2d 366, 42 P.2d 700.

" 'The reason for allowing such wide discretion in the trial court is aptly stated in Brennan v. Mayo, 100 Mont. 439, 448, 50 P.2d 245, 249, as follows:

" 'Here we are permitted to examine only the cold record, whereas the trial judge who granted the motion for a new trial was afforded the opportunity of seeing the witnesses and of hearing them testify. He was thus better able to understand and construe the testimony in the light of the surrounding circumstances.

" 'In this case the order granting the new trial did not specify on which ground it was made. The rule is established that if the trial court acted within its sound discretion in ordering a new trial upon any ground stated in the motion, then its action will be upheld. Kynett v. New Mine Sapphire Syndicate, 137 Mont. 82, 350 P.2d 361.'

"We have more recently considered this matter in Campeau

v. Lewis, [144 Mont. 543] 398 P.2d 960, wherein we expressed our respect for the discretion of the trial judge and our reluctance to disturb his new trial ruling. We held there, however, that this court may disturb an order granting a new trial when it appears that there was 'substantial evidence' presented to support the verdict. Of course, these remarks are confined to those instances in which the new trial was granted for insufficiency of the evidence and not for errors of law .

"Our opinion in that case was that to grant a new trial in the face of 'substantial evidence' in support of the verdict was an abuse of discretion, and we might well have termed it, as we do here, a manifest abuse of discretion."

In a more recent case, Heen v. Tiddy, 151 Mont. 265, 442 P.2d 434, 25 St.Rep. 357, we reversed an order granting a new trial on grounds of insufficiency of evidence. In the Heen v. Tiddy case, although the opinion of this Court cited above does not set forth these facts, a jury verdict in the amount of $1,000 was returned. The trial court attempted to grant a new trial on the issue of inadequacy of the verdict, specifically restricting the new trial to the issue of damages only. We held there that when there was only at best conflicting evidence, it was an abuse of discretion to grant a new trial.

Referring back to subdivision 6 of section 93-5603, R.C.M. 1947, in the early case of Flaherty v. Butte Electric Ry. Co., supra, the rationale was that when a verdict in an amount of less than the *uncontradicted* evidence shows a plaintiff is entitled to receive, then the evidence is insufficient to support the verdict.

In other words, the holding in Flaherty v. Butte Electric Ry. Co., supra, only states that a new trial may be given upon the grounds of insufficiency of the verdict when the uncontradicted evidence is that the plaintiff is entitled to

receive a certain amount, and the jury awards less than the uncontradicted evidence shows.

Whereas in this case the quality and quantum of the evidence of damages is such that the conscience of a reasonable man would not be shocked, and as here it seems obvious that the trial court was confused as to what went on during the trial, we find that it was an abuse of discretion to grant a new trial.

By what we have said heretofore, reviewing the evidence offered here, clearly the jury returned a verdict in an amount in excess of the actual, determinable and nonspeculative damages. Therefore the district court abused its discretion and the order granting a new trial is reversed.

MR. CHIEF JUSTICE JAMES T. HARRISON and MR. JUSTICES HASWELL, ADAIR and JOHN CONWAY HARRISON, concur.