No. 83-133

IN THE SUPREME COURT OF THE STATE OF MONTANA

1983

---

JAMES H. DAWSON, Individually,
DOLORES J. DAWSON, Individually,
JAMES H. DAWSON as Personal Representative,

Plaintiffs and Petitioners,

-vs-

HILL & HILL TRUCK LINES,

Defendant and Respondent.

---

ORIGINAL PROCEEDING:

COUNSEL OF RECORD:

For Petitioners:

Hoyt & Trieweiler; John C. Hoyt, Great Falls,
Montana

For Respondent:

Robert J. Emmons, Great Falls, Montana

---

Submitted on Briefs: June 30, 1983

Decided: October 21, 1983

Filed: OCT 21 1983

*Ethel M. Harrison*

Clerk

Mr. Justice Frank B. Morrison, Jr. delivered the Opinion of the Court.

By declaratory relief, petitioners request this Court to answer the following question certified by the United States District Court for the District of Montana, Great Falls Division:

> "Are damages for the sorrow, mental distress or grief of the parents of a deceased minor recoverable in a wrongful death action brought pursuant to section 27-1-512, MCA, 1979?"

This is a wrongful death action arising out of a five-vehicle crash which occurred on a snowy day in January, 1982, on U.S. Highway 87 between Belt and Great Falls, Montana. The petitioners, James H. Dawson and Dolores J. Dawson, allege that a driver for the defendant, Hill & Hill Truck Lines, attempted to pass two vehicles even though the weather conditions made it impossible for him to see traffic approaching from the opposite direction. Before the driver could return to his lane of traffic, petitioners allege that his loaded and protruding flatbed trailer was struck by a gasoline tanker truck, which was proceeding from the opposite direction. The petitioners' son and daughter were in one of the cars being passed. As a result of the accident, the Dawsons' seventeen-year old son was killed and a daughter was injured.

The deceased was the petitioners' only son. Petitioners allege he was an outstanding individual and student who would have been the valedictorian of his graduating high school class had he lived another four months. By this request for declaratory relief, the petitioners have asked this Court to recognize that "just" damages authorized by statute include the mental distress and anxiety suffered by petitioners as a result of the wrongful death of their son.

2

The statute governing damages which may be awarded in an action brought under section 27-1-512, MCA, is section 27-1-323, MCA, which provides:

"In every action [for wrongful death], such damages may be given as under all the circumstances of the case may be just."

Montana has not allowed wrongful death awards to be unrestricted. Rather, we have followed the pecuniary loss rule, although recovery is permitted for loss of society and companionship to the extent such loss has a pecuniary value. Mize v. Rocky Mountain Bell Telephone Co. (1909), 38 Mont. 521, 100 P. 971; Hollingsworth v. Davis-Daly Estates Copper Co (1909), 38 Mont. 143, 99 P. 142.

The majority of jurisdictions has consistently refused to permit recovery for mental anguish in a wrongful death action. In so doing, these jurisdictions have followed the English decision rendered in Blake v. Midland Railway Co. (QB 1852), 118 Eng.Rep. 35.

Prior to the Blake decision, the British Parliament enacted Lord Campbell's Act which, in pertinent part, provided:

"[W]henever the death of a person shall be caused by wrongful act, neglect, or default . . . such as would have entitled the parties injured to maintain an action and recover damages in respect thereof, then and in every such case the person who would have been liable if death had not insued shall be liable . . . [A]nd in every such action the jury may give such damages as they may think proportioned to the injury resulting from such death to the parties respectively for whom and for whose benefit such action shall be brought . . ."
Fatal Accidents Act, 1846, 9 & 10 Vict. c. 93.

Lord Campbell's Act was Parliament's attempt to ameliorate the harshness of a decision by Lord Ellenborough who, in Baker v. Bolton (KB 1808), 170 Eng.Rep. 1033, held that at common law there could be no recovery for the wrongful death of a person.

3

Lord Campbell's Act, like the Montana statute governing wrongful death damages, seemed to provide for all damages as were found by the jury to be just. However, the English courts soon imposed the limitations first defined in Blake.

John Blake was killed when two of the defendant's trains collided. Liability was admitted and the case proceeded to trial on damages. The trial judge instructed the jury that the jury might, in addition to awarding loss of support, also compensate the widow for her emotional pain. The appellate court reversed the plaintiff's judgment, holding that the jury had been improperly instructed on damages. The court stated: "The title of this Act may be some guide to its meaning: and it is 'An Act for Compensating the Families of Persons Killed;' not for solacing their wounded feelings . . ." Blake, 118 Eng.Rep. 35 at p. 42. The court seemed to feel that a more expansive rule would be impossible for the jury to apply. The court said:

> "[T]he measure of damages is not the loss or suffering of the deceased, but the injury resulting from his death to his family. This language seems more appropriate to a loss of which some estimate may be made than to an indefinite sum independent of all pecuniary estimate to soothe the feelings . . .
>
> "We conceive that the Legislature would not have thrown upon the jury such great difficulty in calculating and apportioning the solatium to the different members of the family without some rules for their guidance." Blake, 118 Eng.Rep. 35 at p. 43.

The English rule has been followed by most American jurisdictions. See 1 Speiser, Recovery for Wrongful Death, (2d Ed. 1975), §3:1; Prosser, The Law of Torts (4th Ed. 1971), §127, pp. 906-907.

Blake must be read and understood in its historical context. The social policies existent in 1852 England and which may have influenced the court were traced by the

4

Supreme Court of Michigan in Wycko v. Gnodtke (1960), 361 Mich. 331, 105 N.W.2d 118:

> " . . . The rulings reflect the philosophy of the times, its ideals, and its social conditions. It was the generation of the debtor's prisons, of some 200 or more capital offenses, and of the public flogging of women. It was an era when ample work could be found for the agile bodies and nimble fingers of small children . . .
>
> "This, then, was the day from which our precedents come, a day when employment of children of tender years was the accepted practice and ther (sic) pecuniary contributions to the family both substantial and provable . . .
>
> "That this barbarous concept of the pecuniary loss to a parent from the death of his child should control our decisions today is a reproach to justice. We are still turning, actually, for guidance in decision, to 'one of the darkest chapters in the history of childhood.' Yet in other areas of the law the legal and social standards of 1846 are as dead as the coachman and his postilions who guided the coaches of its society through the dark and muddy streets, past the gibbets where still hung the toll of the day's executions." (citations omitted) 105 N.W. 2d at pp. 120-121.

The English court in Blake articulated the rule's rationale to be the certainty of loss estimation. The underpinnings of the rule were discussed by a Federal District judge in In Re Sincere Navigation Corp. (E.D.La. 1971), 329 F.Supp. 652:

> "Human experience, as well as the literature of psychiatry and psychology bear abundant evidence of the debilitating effect of grief and the resultant depression. It is certainly no less real, and no more difficult to appraise, than the 'mental and physical pain and suffering' attendant upon personal injury that is awarded those who survive, or the pain and suffering prior to death that is recoverable as part of the death action here. . ." (citations omitted) 329 F. Supp at p. 656.

Montana, unlike many jurisdictions, allows recovery in a wrongful death action for loss of care, comfort, society and companionship, holding that the speculative nature of such awards is no objection. Burns v. Eminger (1929), 84 Mont.

397, 276 P. 437. In Davis v. Smith (1968), 152 Mont. 170, 448 P.2d 133, this Court said:

> "As to the third item, loss of society, comfort, care and protection . . . no extensive proof was made except that the son was a normal child. It is obvious that to put a monetary value on this is something solely within the province of the jury." 152 Mont. at p. 174, 448 P.2d at p.135.

Although Montana has consistently adhered to the requirement that the loss of society and companionship be susceptible of "pecuniary loss" translation, this Court has refused to require a yardstick for measurement.[1] If a jury can evaluate the intangible loss suffered from not having the decedent's care, comfort and companionship, surely that same jury can be trusted to ascribe damages to grief.

The remaining argument advanced for denying expansion of the rule lies embedded in stare decisis. A rule whose ancestral origins are rooted in Charles Dickens' England does not square with the tort principles of our time.

Chief Justice Haswell, dissenting in Consolidated Freightways Corp. v. Osier (1979), _____ Mont. _____, 605 P.2d 1076, 36 St.Rep. 1810, stated eloquently a refutation for blind adherence to the English common law:

> "The source of the rule . . . is the English common law . . . Being a rule of the common law, it is purely judge-made law. Judges created the rule by judicial decision, and judges can change it in the same manner . . . This approach is now as extinct as the dodo. Montana's 1972 Constitution guarantees access to the courts to all persons and speedy recovery afforded for every injury of person, property or character. Art. II, Sec. 16, 1972 Mont. Const. When the reasons for the rule no longer exist, the rule itself fails. Section 1-3-201, MCA. _____ Mont. at p. _____, 605 P.2d at pp. 1082-1083, 36 St.Rep. at p. 1818."

Justice Cardozo, in his singular style, wrote:

> "If judges have woefully misinterpreted the mores of their day, or if the mores of their day are no

---

[1] For an excellent discussion of Montana cases, see Strong and Jacobsen, _Such Damages as are Just: A Proposal for More Realistic Compensation in Wrongful Death Cases_, 43 Mont. L. Rev. 55 (1982).

longer those of ours, they ought not to tie, in helpless submission, the hands of their successor." B. Cardozo, The Nature of the Judicial Process 152 (1921).

Other jurisdictions have begun to flee the constraints imposed by Blake. Prior to 1970, Arizona had construed its Wrongful Death Act to allow for the same type of recovery permitted in Montana, including expanding the pecuniary loss rule to embrace compensation for loss of care, comfort and society. City of Tucson v. Wondergem (1970), 105 Ariz. 429, 466 P.2d 383, afforded the Arizona Supreme Court an opportunity to shed the vestiges of English common law:

"There can be little argument against allowing damages 'resulting from the death' for 'anguish, sorrow, stress, mental suffering, pain and shock,' under the facts of the instant case, where we have held, as in Boies v. Cole [(1965), 99 Ariz. 198, 407 P.2d 917], that damages for loss of companionship, comfort and guidance are recoverable. The loss of companionship and comfort certainly results in sorrow, and the failure to permit such recovery falls short of 'fair and just' standards set forth in [our statute] . . ." 466 P.2d at p. 387.

Petitioners' brief relies upon the concurring opinion filed in Bedgood v. Madalin (Tex. 1980), 600 S.W.2d 773. In that case Justice Spears quoted Lambert, Rheingold & Joost, Recent Important Tort Cases (1964), 30 N.A.C.C.A.L.J. 188, at 194:

"It is hard to distinguish the deep emotional wounding of the bereaved parent from the physical pain and mental suffering of the plaintiff with bodily injury, or the loss of enjoyment of one who can no longer engage in sports or favorite activities, or the loss of consortium by the spouse of an injured victim." 600 S.W.2d at p. 779.

Petitioner also points to Stanford v. McLean Trucking Co. (E.D. Texas 1981), 506 F.Supp 1252, wherein a federal judge predicted that Texas would follow Justice Spears' concurrence.

Respondent counters by arguing the majority of the Texas court held mental anguish, sorrow, or grief were not

7

recoverable and limited recovery to pecuniary damages.
Respondent further states on page 44 of its brief:

" . . . The prediction by the Federal Court in
Stanford v. McLean Trucking Co., 506 F.Supp. 1252,
1259 that Texas would follow the concurring opinion
in Bedgood is bizarre when the majority opinion
denied the recovery of these damages. In fact,
Bedgood recognized that any change on this issue
must essentially come from legislation."

The Texas debate has been answered in an opinion issued
April 27, 1983, rehearing denied June 15, 1983. The Supreme
Court of Texas has overruled all prior decisions and decreed
that damages for mental anguish will be permitted in a
wrongful death action instituted by a parent for the death of
a minor child. Sanchez v. Schindler (Tex. 1983), 651 S.W.2d
249.

The Texas court addressed the question of whether the
judiciary should await legislative action. The court said:

"The legislature has attempted to amend the Texas
Wrongful Death Act to allow damages for loss of
society and mental anguish; however, none of the
bills have passed. This court should not be bound
by the prior legislative inaction in an area like
tort law which has traditionally been developed
primarily through the judicial process. Green,
Protection of the Family under Tort Law, 10
Hastings L.J. 237, 245 (1959). In his article,
Dean Green stated that because the difficulties in
reducing the refinements of tort law doctrines into
statutory form often result in legislation which is
either underinclusive or overbroad and which is
frequently couched in ambiguous terms which the
court must interpret, judicial decision is the best
way to develop tort law. Id. at 246. Inaction of
the legislature cannot be interpreted as
prohibiting judicial reappraisal of the judicially
created pecuniary loss rule . . ." 651 P.2d at 252.

An English court in the 1852 Blake case judicially
restricted a legislatively granted remedy. The courts which
followed that lead should, one-hundred thirty-one years
later, be free to apply a more fitting interpretation.
Montana allows the estate of a decedent to recover damages
for the decedent's pain suffered prior to death. Surely a
jury which can lawfully weigh such intangible damage can be

trusted to fairly compensate for the grief suffered by the survivors.

The same day that this opinion is being released another opinion from this Court is being released answering a certified question from the United States District Court in a case entitled Sharon K. Versland, Individually, as Personal Representative of the Estate of Bert Martin Versland, Deceased, and as Next Friend of Michelle Louise Jones and Laura Korpela, Minor Children, vs. Caron Transport. In the Versland case, this Court, for the first time, recognizes a cause of action for negligent infliction of mental and emotional distress. The opinion in this case, for the first time, allows recovery for mental distress damages in a wrongful death action. The two are not to be confused. A negligent infliction action, such as the one recognized in Versland, supra, compensates for mental distress from having witnessed an accident. The mental distress for which recovery can be sought under the rationale of Dawson, is limited to mental anguish, sorrow or grief resulting from the death. The two actions are distinct and separate. If the two actions are joined in one case then damages for the negligent infliction of mental and emotional distress must be limited to those damages caused by the witnessing of the accident. Damages awarded for mental distress as the result of wrongful death must be limited to the damages which are caused by the loss of the decedent's life.

We hold that damages for the sorrow, mental distress or grief of the parents of a deceased minor are recoverable in a wrongful death action brought pursuant to section 27-1-512, MCA. Any previous Montana decisions, to the extent they conflict with this holding, are expressly overruled.

Justice

We concur:

_____
Chief Justice

_____

_____

_____
Justices

Justice Harrison deems himself disqualified and did not participate.

10.

Mr. Justice Fred J. Weber respectfully dissents as follows:

In its opinion the majority concludes by overruling any previous Montana decisions which are in conflict, without analyzing the same. I do not agree with that procedure. The majority is making a significant change in the case law of this state and should specify the decisions being modified or overruled.

Sanchez v. Schindler (Tex. 1983), 651 S.W.2d 249 is the Texas case cited as authority in the majority opinion. The Texas Supreme Court listed in a footnote the cases it overruled. Sanchez, 651 S.W.2d 249, 251 n.2.

As historical perspective, the majority opinion refers to the 1852 Blake decision and other 19th century cases from England. No reference is made to California, the state from which Montana adopted its wrongful death statute. In addition to the English cases, reference is made to case law from Michigan, Louisiana, Arizona and Texas. I believe the cases from Michigan, Louisiana and Arizona are clearly distinguishable, but will not discuss them in detail. In Wycko v. Gnotke (1960), 361 Mich. 331, 105 N.W.2d 118, 122, the Michigan Supreme Court held that the pecuniary value of a child's companionship was recoverable. In 1968, this Court reached the same conclusion, modified the strict pecuniary loss rule which had originated from Lord Campbell's Act, and allowed recovery for loss of a child's society, comfort, care and protection. See Davis v. Smith (1968), 152 Mont. 170, 174, 448 P.2d 133, 135. I found no Michigan authority allowing recovery for grief and sorrow of a survivor. The Louisiana and Arizona case law appear inapposite since the Louisiana code specifically allows recovery for "grief, mental anguish, and distress" and the Arizona Constitution specifically prohibits any limitation on recovery in wrongful

11

death cases.  See La. Code Civ. Proc. Ann., Forms 321 & 325; Ariz. Const. art. 2, §31.

The Texas case of Sanchez is discussed at length by the majority.  One of the problems of using that case as authority is best stated by Chief Justice Pope, who noted in his dissent in Sanchez that the majority failed to:

> ". . .cite a single case in which a court has authorized damages for mental anguish by overruling a longstanding statutory construction that has been ratified by legislative reenactment . . .."  651 S.W.2d at 257.

The Montana Legislature has met a number of times since the 1877 enactment of what today is section 27-1-323, MCA.  The Legislature has not seen fit to modify this Court's interpretation of that statute by amendment or otherwise.  In Sanchez, Chief Justice Pope noted that aside from the Supreme Court of Texas, only eleven states have permitted recovery for mental anguish of survivors in wrongful death cases.  Ten of those eleven states have allowed recovery by legislative action.  See Sanchez, 651 S.W.2d 249, 257 n.6.  This is a strong argument for leaving to the Montana Legislature the decision which the majority is making here.

The trend to allow recovery for grief, sorrow and mental distress in wrongful death cases appears to be legislative, rather than judicial.  I note that in the Pacific Reporter region, nine states including Montana have statutes allowing such damages as are just.  Alaska Stat. §09.55.580 (fair and just); Cal.Civ.Proc. Code §377(a) (just); Hawaii Rev. Stat. §663-3 (fair and just); Idaho Code §5-311 (just); section 27-1-323, MCA (just); N.M. Stat. Ann. §41-2-3 (fair and just); Utah Code Ann. §78-11-7 (just); Wash. Rev. Code §4.20.020 (just).  Washington has, by statutory amendment, allowed recovery for injury to or destruction of the parent-child relationship.  Wash. Rev. Code §4.24.010.  This

12

statute has been judicially interpreted to include recovery for grief. Kansas, Nevada and Oklahoma statutory law specifically permit such recovery. Kan. Stat. Ann §60-1904 (mental anguish, suffering or berievement); Nev. Rev. Stat. §41-090 (grief or sorrow); Okla. Stat. Ann. title 12 §1053 (grief). California, from which Montana adopted its wrongful death statute, has not amended its statute and has refused to allow recovery for grief and sorrow by judicial decision. Krouse v. Graham (1977), 19 Cal.3d 59, 73, 562 P.2d 1022, 1028, 137 Cal.Rptr. 863, 869. This suggests the wisdom of allowing the Legislature to determine if public policy has changed and whether recovery for mental distress, grief and sorrow requires abandonment in Montana of longstanding statutory construction that is consistent with that of other jurisdictions with similar legislation.

The majority opinion does not state if it is modifying or abandoning the pecuniary loss rule in Montana, as was done in Sanchez by the Texas Court. If the rule has not been abandoned, will substantial evidence of the pecuniary value of the loss of companionship and society still be required in Montana? Will a different standard be applied to measure damages recoverable for loss of companionship and damages recoverable for grief and sorrow?

I am unable to distinguish between mental or emotional distress recoverable in a wrongful death case (Dawson) and mental or emotional distress recoverable in a negligent infliction of emotional distress case (Versland). Our Versland decision is based upon the California case of Dillon v. Legg (1968), 68 Cal.2d 728, 441 P.2d 912, 69 Cal.Rptr. 72. In Dillon, the California Supreme Court allowed recovery for emotional distress suffered by a mother who witnessed her daughter being struck and killed by a motorist. That case is

13

factually comparable to Versland, where the wife watched the collision in which her husband was killed. Dillon and subsequent California cases have allowed recovery by bystanders for emotional distress suffered as a result of witnessing or hearing the accident with damages including mental and emotional distress suffered after the victim's death. Note that California does not, however, allow recovery for grief, sorrow or mental distress in a case like Dillon.

In seeking to analyze Versland in relation to Dawson, the majority points out that if the action for mental distress from having witnessed the accident is combined with a wrongful death action for mental anguish, sorrow and grief, then the recovery under Versland is limited to the damages caused by witnessing the accident but does not include the mental distress resulting from the death. That concept suggests that there is a line between the emotional distress suffered from witnessing an accident that results in the instantaneous death of a loved one, and the emotional distress suffered from sorrow and grief that follows the death. I do not understand that distinction and would be unable to explain it to a jury.

Justice

14